Judge Ewing
delivered the opinion of the Court
Neal McCoy brought an action of covenant against Richard Martin, for a breach of covenant contained in a bill of sale for a slave, sold by Martin to McCoy, warranting the soundness of the slave.
The declaration, after setting out the usual declaratory statement, concludes as follows:—
“And the said plaintiff in fact avers that, at the time of *581 the said sale and delivery of said slave, by the said defendant, to said plaintiff, and of the warranty aforesaid, the said slave was not sound, but on the contrary, was then and there unsound, being greatly diseased in body, of a disease called the stiff back, so that he was then and there of little or no value, and so said plaintiff says, said defendant hath not kept and performed his said covenant, but hath broken the same, but to keep the same hath wholly failed and refused &c.”
Plea, ,&c. Verdict &c. and questions for decision,
A deeisiqn refusing a new trial," moved on the ground that the verdict was contrary to evidence, willnotbe reversed, _ unloss the verdict was very clearly vyrqnj*.
Tim plea to an action of covenant upon a warranty of soundness, should traverse the existence of the unsoundness or defect charged as constituting the’ breach. Moninjregit, or covenants porforme4 is not the proper plea: though, after verdict, by the help of the statutes of jeofails, it may do. The dee’n upon a covenant of soundness in the bill of sale of a slave, assigns as a breach that the slave was unsound, being diseased of $-c. specifying the disease, and concluding with, “so the def’t lias not kept and performed his said covenant.” The defendant pleads, merely, “that he has kept and performed his covenants;” and,on that plea, issue is joined, and a trial had, with verdict & judg’t for def’t. Held, that the issue was not immaterial ; that the ver ■ diet and judg’t might be effectually pleaded in bar of another suit for the same cause, & the defects are, therefore, cured by thestatuteofjeo- -
*581 To which the defendant filed his plea, in which “he says, that he has kept and performed his covenant, and this he is ready to verify:” upon which issue was taken by the plaintiff, and a verdict found, and judgment rendered thereon, for the defendant. A motion for a new trial was moved, upon the ground that, the verdict was against evidence; which being overruled by the Court, the case has been bi’ought to this' Court.
Only two errors are assigned which demand the consideration of this Court: First—that the Court erred in overruling the motion for a new trial.
Second—That the Court erred in not awarding a re-pleader, the issue being immaterial.
There is no just reason for reversal on the first ground relied on.
There was a contrariety of evidence as to the soundness, and unsoundness, of the slave: the jury have passed upon it, and the Circuit Court refused a new trial, and we should not, except upon the most obvious grounds, disturb the verdict, and no such grounds exist in this case.
But the second error assigned has presented more difficulty.
It certainly would have been most regular, and conformable to the strict rules of pleading, to have taken issue upon the material matter definitely charged in the declaration —the unsoundness of the slave, by a direct negative of that averment.
But whether the issue joined by the plea, that he has kept and performed his covenant, is so totally immaterial as not to be cured by the verdict, is the question.
We are referred to the case of Champ vs. Ardery, (2 *582 Marshall, 247) as a direct authority in support of the affirmative of this proposition.
This case is a solitary one upon the point, and seems to have been decided upon “first blush,” without reference to any authority to sustain it, and in effect, has been subsequently overruled by subsequent decisions, as will be presently shown.
It is predicated upon a technical analysis and construction of the plea, variant, it may well be presumed, from the intention of the pleader, and the understanding of the triors.
Now, it is a rule that, after verdict, such interpretation shall be given to the pleadings, as will sustain the verdict, if it can be done by any reasonable intendment. And (secondly) though, in general an equivocal expression, and it may be added a doubtful meaning, is to be construed against the party using it, yet when the opposite party has pleaded over, that is an admission that the expression, or doubtful meaning, is to be taken in that sense, which will support the previous pleading, and sustain the verdict. 1 Chilly 274, 712.
And (thirdly) when a matter is so essentially necessary to be proved, that had it not been given in evidence, the jury could not have given such a verdict, the want of stating that matter in express terms in the declaration, (and which applies equally to a plea,) provided it contains terms sufficiently general to comprehend it, in fair and reasonable intendment, will be cured by a verdict, and when a general allegation must, in fair construction, require to be so far restrained that no judge or jury could properly treat it in an unrestrained sense, it may reasonably be presumed after verdict, that it was so restrained at the trial. Stephens' Pleading, 179.
Now, apply these rules to the question under consideration. Though it may be admitted that the covenant, according to a technical, strict construction of its import, contains no stipulation to perform any thing, in the literal sense of the term, may not such construction be given to the general averment in the plea, that he lias kept and performed his covenant, as will support the in-
*583 tentión of the parties-, and sustain the verdict, without doing violence to its terms? We think it may!
The plaintiff, after averring the unsoundness of the slave specially, concludes by saying, and so the plaintiff says that, the defendant “hath not kept and performed his covenant.” The defendant responds that he has kept and performed his covenant. Now, what do the parties mean? The plaintiff means that, the defendant has not kept his covenant in the particular averred, or otherwise, that the slave was not sound. When the defendant pleads, generally', that he has kept and performed his covenant—is it doing violence to the plea, or extending its interpretation beyond any reasonable intendment, to contend that it is a denial of the unsoundness of the slave, made in general terms, by his general denial of the conclusion of the plaintiff from the special facts averred? And when the plaintiff replies, in equally general terms, that he has not kept and performed his covenant—is it not fairly to be intended, that he so understood the plea, and that by pleading over, it is an admission that the doubtful or equivocal meaning of the plea shall be so understood as to support the previous pleadings, and sustain the verdict, as required by the second rule before stated? If the soundness of the slave was not intended, on the one side to be affirmed, and on the other, to be denied, by the plea, and replication, no intelligible meaning could be attached to either; and surely such interpretation ought not to be given to them after verdict, as would make the parties mean nothing; especially when that interpretation is to defeat the finding of the jury, upon a full understanding and trial of the issue, as involving that matter.
Again: the covenant is, that the slave was sound at its date. When the plea says, that he has kept his covenant, may it. not be understood, without any violent intendment, as the assertion of the fact, in general terms, that the covenant has not been violated, or that the thing was as he covenanted it should be? If so, it is to be understood as a broad allegation, that the slave was sound, or a broad allegation, treated by the jury in a restrained sense; as without such restriction and *584 understanding of it, a verdict could not have been found for the defendant.
Upon the whole, we regard the plea as a good bar defeclively stated, and not the statement of a defective bar. And will be cured by intendment after verdict, or aided by the statute of jeofails. That it does not tender an issue so altogether collateral to, and foreign from, the matter put in contest by the declaration, as to make it necessary for the Court to award a repleader. Por a re-pleader will never be awarded, since the English statutes of jeofails, except when the issue tendered by the plea, is so foreign from the matter in contest,- that it may be true, and the defendant not rescued from liability, nor the plaintiff barred of his right of recovery, and therefore, the Court, upon the issue found, cannot pronounce judgment upon the whole record, in favor of either party: not for the plaintiff, for the verdict is not for him; nor for the defendant, for the issue found for him, is of a matter so foreign from the matter complained of, that though it be true as found, his liability is not concluded.
But we regard the principle settled in the case of Champ vs. Ardery, in effect, overruled, in the case of Myers vs. Bishop, 1 Monroe, 110. The latter case was covenant on a warranty, that a slave was sound and healthy. Bishop pleaded that, he had not broken his covenant modo et forma. Issue, and verdict and judgment for the defendant. It was assigned for error, that the plea was defective. The Court say “that the plea is evidently not such an .one, as would be sustained upon a demurrer at common law. Instead of denying that he had broken- his covenant, in technical strictness, Bishop should have traversed the unsoundness of the negro alleged in the declaration.” The Court then decide that the defect is cured by verdict, and say, “that after failing, in the Court below,.to object to the plea, he should not be permitted for the first time, in this Court, to avail himself of the objection.”
Now, the reasoning of the Court, in the case of Champ vs. Ardery, would as well apply to the plea of non infregit, as to the plea of covenants performed. When the *585 Court say in the case of Champ and Jlrdery, that there is no stipulation to perform any thing, and so draw the bonelusion that “covenants performed is no response,” is it not equally clear that there is nothing to be broken? To ■1 v ^ ° break a covenant implies an act done, as well as to perform a covenant. And if one is good, after verdict, to covenants in presentí, so must also the "other be. Besides, it is laid down in Chilty, that non infregit is a bad plea on demurrer (1 Chilty, 523,) which is in the general true, and covenants perfoi’mod is,'generally, a good plea on demurrer, and almost universally so, after verdict.
In Treble vs. Oldham, 5 J. J. Marsh. 138—9, it is decided that a warranty of soundness is an executory covenant. This seems inconsistent with the idea that the plea of covenants performed, tendprs an immaterial issue.
But if it were conceded that tVe were wrong in all the above positions, it seems to us clear, that the error is cured by our statute of jeofails of 1799. (Statute Law, 875.) The language of that statute is, that “no judgment, after a verdict of twelve men, shall be stayed or reversed, when it shall appear to the Court, that the merits of the cause, have been fairly and fully decided by such verdict, and that such verdict and the judgment thereon, might be effectually pleaded in bar, to another suit, for the same cause.” If the above statute means anything, it must cure the defect relied on in this case-. The merits of the cause seem to have been fairly and fully decided by the verdict, and upon a plea understood to put in issue the merits of 'the controversy, and admitted to do so, by the plaintiff’s replication over; and the verdict and judgment may be effectually pleaded in bar to another suit. We are, therefore, of opinion that, the judgment should not be reversed, for any “mispleading or insufficient pleading,” if it be conceded, that any could be regarded as existing, after verdict.
The decision in the case of Champ and Jlrdery, and the respect which we entertain for the Court who pronounced that decision, have induced us to give . to the question involved in this case, a more minute and de *586 tailed examination, than otherwise we would have deem-» ed it necessary to do.
It is, therefore, the opinion of the Court, that the judgment of the Circuit Court be affirmed.