CHILES
*vs*
JONES.

---

# T. D. & J. Chiles *vs* T. T. Jones; Same *vs* J. Jones; Same *vs* B. T. Jones.

CASE.

## APPEAL FROM THE CLARKE CIRCUIT.

### *Evidence. Parol contracts. New trial.*

Case 15.

JUDGE MARSHALL delivered the opinion of the Court.

September 15.

IF there was a parol agreement between the Jones's and Chiles's, that the delivery of the hemp by the former, should be postponed beyond the day mentioned in the covenant between them, which fixed the price to be paid on delivery, we are of opinion that such agreement constituted a new parol contract between the parties, identical with the terms of the written contract, except as

Where there is a written contract for the delivery of property, and fixing the time of delivery, and the price to be paid therefor, if a parol contract be afterwards made changing the

CHILES
vs
JONES.

time of delivery, in a suit in assumpsit for the price, the written agreement is properly admissible in evidence as inducement to the parol agreement and evidence of its terms.

to the time of delivery, and payment; and that as there was no performance or tender, according to the terms of the covenant, a delivery of the hemp according to the parol agreement, gave a cause of action in *assumpsit* upon that agreement—of course, on the trial of such action the written contract would be admissible evidence as inducement to the parol agreement, and as evidence of its terms. And the covenant of the Chiles's to pay, though joint in terms, being as heretofore decided, (*Chiles, &c.* vs *Jones, &c. Spring Term* 1840, *Mss. op.*) several in effect, so as to give to each of the Jones's a separate cause of action, upon performance of the covenant according to its terms, it follows that the parol agreement, arising on the agreement to postpone the delivery of the hemp should be regarded as of the same nature, and that its performance by the Jones's gave them separate actions for the price of their respective crops delivered under the contract.

Points arising in these cases.

These principles being settled in favor of these several actions, the questions on which the right of recovery in each depends, are, 1st, Whether John Chiles confirmed or assented to the contract as originally made by his partner, T. D. Chiles, in the name of the firm, as to which there is sufficient evidence in each case to authorize a finding in the affirmative; 2d, Whether, while the covenant remained in force, there was any agreement between the parties thereto, postponing the time of delivery, and, 3rd, Whether the delivery made to Newman's order, was by the authority or direction of Chiles & Co., and therefore a performance of the said parol agreement, or whether it was made under a new and independent contract between the Jones's and Newman, made before the delivery of the hemp, or arising upon that fact.

Parol proof sufficient to authorize the jury to find that the parties had postponed the day fixed for performance by the written contract.

On these two last questions, the testimony of Thomas T. Jones, who was a witness in the suits brought by John Jones and B. T. Jones, affords ample ground for finding that there was such a parol contract of postponement between the parties to the covenant, and that the delivery afterwards made was in pursuance of that contract and by authority from Chiles & Co. And although in the case in which Thomas T. Jones was plaintiff, there was no

CHILES
*vs*
JONES.

testimony equivalent to that which he gave in the other cases, we cannot say that there were not, exclusive of his testimony, circumstances in that and in all the cases from which the jury might rationally infer the existence of the facts just stated, and which, if true, gave a complete cause of action.   The hemp was originally purchased by Chiles & Co., not for themselves but for Newman, though upon their credit and at a fixed price.   The price of hemp fell after the date of the covenant.   The Jones's may be assumed to have been able to deliver the hemp within the period stipulated in the covenant, and the delivery was to be made at their respective farms.   It was afterwards actually delivered at their farms, to Newman, for whom it was purchased by Chiles & Co.   Newman lived in a different county from the other parties, and there is not the slightest evidence of any contract between him and the Jones's, except that which might arise from the mere fact of delivery to him, and that would have entitled the vendors only to the current price at the time.

Did they abandon their contract at six dollars per 100, trusting merely to a falling market?   Did they abandon the responsibility of their neighbors, Chiles & Co., and credit Newman, who lived at a distance?   In making the original contract they did not know that Newman was to have the hemp, why did they deliver it to him afterwards upon his mere request, without any stipulation from him as to price or terms of payment?   May it not be fairly presumed, in the absence of all evidence of any express contract with Newman, that they omitted to secure the benefit of an action on the covenant, by tendering the hemp according to its terms—in consequence of an agreement with Chiles & Co., that the delivery should be postponed, and that they afterwards made the delivery to Newman by authority of Chiles & Co?   It is not necessary to the support of the verdict, that this should be the most rational inference from the facts—it is sufficient that it is not an irrational or illegitimate inference.   And not deeming it to be so, we are of opinion that the evidence authorized a verdict for the plaintiff in each of the three cases.

*It is not necessary that the inference drawn by the jury should be the most rational from the facts proved; it is sufficient, to sustain the verdict, that it be not an irrational inference.*

The amount of each verdict seems to correspond with the price of the hemp delivered by the plaintiffs respectively, charged at $6 per 100 lbs., with six per cent. interest from the time of delivery to the rendition of the verdict; and the evidence, to say the least of it, did not require that any deduction should be made from the contract price. For although the witness who received the hemp for Newman, says that after taking it to the factory it was discovered that some of it was inferior; he speaks merely in general terms, without any specification on which a deduction could be safely made; and besides, there seems to have been no offer to return or reject the hemp after the discovery, nor any notice to the Jones's, or any of them, that any objection existed. The verdicts, therefore, cannot be regarded as excessive.

The instructions given by the Court were in conformity with the principles of this opinion. There was no error in overruling the motions for a nonsuit in each case. Wherefore, perceiving no error to the prejudice of the defendants in the progress of the trial, or in refusing to grant a new trial on their motion, the judgment in each of the three cases is affirmed.

*Apperson* for appellant: *Hanson* for appellees.