## Louisville & Interurban Railroad Company v. Roemmele.

(Decided January 23, 1914.)

### Appeal from Shelby Circuit Court.

1. Carriers—Measure of Duty in Regard to the Construction of Racks.—It is the duty of a carrier to exercise the highest practicable degree of care in the construction of racks used in passenger cars, so as to make them sufficient for the purpose intended; and if a rack in which a small package is placed is so constructed as that the ordinary movement or oscillation of the car will cause it to fall out of the rack, it is a question for the jury to determine whether or not the carrier exercised the required degree of care in having in its car this character of rack.

2. Evidence—Admission of Incompetent Evidence—When Not a Ground of Reversal.—A reversal will not be granted by the Appellate Court because of the introduction of incompetent evidence on the trial in the court below, although such evidence was prejudicial to the appellant, where the ruling of the court in admitting it was not made a ground for a new trial.

3. Verdict—When It Will Not Be Disturbed.—A verdict will not be set aside for failure of the trial court to give a peremptory instruction, if there was any evidence authorizing the submission of the case to the jury; nor will the verdict be set aside on the ground that it is flagrantly against the evidence, unless it is apparent from the record on the appeal that it is palpably against the evidence.

4. Verdict—When Not Regarded Excessive.—Although a verdict may at first blush seem out of proportion to the injury received, yet it will not afford cause for reversal, unless it is, in amount, so grossly excessive as to exceed the bounds of reason, or to appear to have been the result of passion or prejudice on the part of the jury.

WILLIS, TODD & BOND, ALEX P. HUMPHREY and FAIRLEIGH, STRAUS & FAIRLEIGH for appellant.

P. J. BEARD, GEO. L. PICKETT for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was brought by appellee to recover of appellant damages for personal injuries caused by the fall from a rack of one of its cars, in which she was a passenger, of a package which struck her upon the shoulder and arm; it being alleged in the petition, as amended, that the package fell because of the negligence of appellant in failing to provide and maintain in the car a rack sufficient to hold the package and prevent it from being thrown therefrom by the ordinary movement of the car.

There were two trials of the case in the circuit court. On the first trial appellee obtained a verdict for $1,500.00, but on appeal the judgment entered on this verdict was reversed; the opinion will be found in 152 Ky., at page 719. On the second trial the jury returned a verdict awarding appellee $4,500.00, and from the judgment entered thereon the present, and second, appeal is prosecuted.

It was urged in its motion and grounds for a new trial and is now contended by appellant; first, that there was no evidence to support the verdict; for which reason the trial court erred in refusing the peremptory instruction asked by it at the conclusion of the appellee's evidence; second, that the verdict is so excessive in amount as to indicate that it was the result of passion or prejudice on the part of the jury. On the record before us we are unable to sustain either of these contentions. In the opinion on the first appeal the court, after reciting the manner in which appellee received her injuries, and holding that, as the evidence failed to show the servants of appellant in charge of the car knew of the presence of the bag and crupper in the rack, they were not guilty of negligence in allowing it to remain therein, said:

"The fact, however, that the servants of the company in charge of the car may not have been guilty of negligence will not exonerate the company from liability for the injury sustained by appellee if it was caused by the defective or insufficient construction of the rack from which the package fell. When the company placed in its cars these racks, intended for the use of passengers, and in which they were invited to put suitable packages, it was the duty of the company to exercise the highest practicable degree of care in their construction to make them sufficient for the purpose intended, and if, as appears

from the evidence in the case, the rack in which this package was put was so constructed as that the ordinary movement of the car would cause it to fall out of the rack, it was a question for the jury to say whether or not the company exercised the proper degree of care in having in its car this character of rack. We do not, of course, undertake to lay down any rule as to the dimensions or depth of these racks or the manner of their construction. What we do say is, that when a package like the one described in this case is caused to fall out of a rack by the ordinary movement of the car, this circumstance itself, in connection with the description of the rack and of the package, is sufficient to take the case to the jury on the issue relating to the sufficiency of the rack. On another trial the case should be submitted to the jury only upon the question of whether or not in the construction and maintenance of this rack the company exercised the highest practicable degree of care to make it sufficient to prevent small packages, properly placed in the rack, from falling out by the ordinary movement of the car, and to clearly present this issue amended pleadings may be filed by the parties.''

On the return of the case to the circuit court an amended petition, filed by appellee, confined the issues, as directed by the opinion of this court, to the questions whether, in the construction and maintenance of the rack in its car, appellant exercised the highest degree of care practicable to make it sufficient to prevent a package like that by which appellee was injured, from falling therefrom by the ordinary oscillation of the car; and whether she was injured by the falling of the package from the rack, and, if so, what damages, if any, she sustained thereby.

It appears from the bill of evidence that appellee lives in Shelbyville; that she had visited a married daughter at or near Crestwood, a village situated on the Louisville & Nashville Railroad, also on the appellant's Interurban Railroad running from Louisville to La-Grange. Desiring to return to her home at Shelbyville, appellee, on the day of receiving the injuries complained of, entered one of appellant's interurban cars at Crestwood upon which she was carried to St. Matthews, a station between Anchorage and Louisville, where she left appellant's car and a few minutes later entered another interurban car operated between Louisville and Shelby-

ville, upon which she rode to her home at the latter place. The injuries she sustained were received on appellant's car five or six miles west of Crestwood. At Woolridge, the first station on appellant's railroad after leaving Crestwood, the car was entered by Powhatan Woolridge, who had in his possession a gunny-bag containing a crupper. He placed the bag containing the crupper in a rack near the rear end of the car. At that time appellee occupied a seat across the aisle of the car nearly opposite the rack in which the bag and crupper were placed. According to her testimony which, on that point, is uncontradicted, appellee did not see Woolridge place the bag and crupper in the rack or know of its presence therein until it fell upon her; but shortly after the depositing of the bag and crupper in the rack appellee, wishing a better view from the car, changed her position from the seat she had been occupying to that under the rack containing the bag and crupper, and had been there but a short time when the bag and crupper fell from the rack upon her left shoulder and arm. The conductor, who was standing a few feet in front of appellee and who had not theretofore observed the bag in the rack, saw it fall upon her, and took charge of and placed it on the floor of the car near the rear door. It is argued by counsel for appellant that the bag and crupper did not constitute such a package as the rack was intended to hold; that its duty went no further than to provide such a rack as would be sufficient to prevent small packages, properly placed therein, from falling out by the ordinary movement of the car; and that as the package in question was of such dimensions that it must in part have projected beyond the rod on the outside of the rack, it must have been patent to Woolridge, who placed it therein, that the rack was not a proper receptacle therefor, therefore he was guilty of negligence in placing it in the rack, for which appellant, in the absence of any knowledge of its presence therein, cannot be held responsible. This argument disregards some of the material facts appearing in the record and shown by appellant's evidence. According to the evidence of appellant's conductor, manager and car inspector the rack was, by actual measurement, 34 inches in length and 10 or 10 1-2 inches in width. The bottom of the rack sloped slightly from the outer edge toward the wall of the car, and the only guard it contained to pre-

vent packages from rolling or slipping out of the rack was a metal rod at the outer edge thereof, the top of which extended only from a quarter to three quarters of an inch above the bottom or outer edge of the rack. There was no evidence to the effect that, when placed in the rack, the bag or crupper projected over the metal rod. According to the testimony of appellee, whose observation of the rack was made immediately after her injury was received and again before she left the car at St. Matthews, this rod was insufficient to prevent such a package as that which fell upon her, or any ordinary package that a passenger would be likely to place in the rack, from being made to fall therefrom by the ordinary movement or oscillation of the car; and it was admitted by appellant's conductor on his cross-examination that bundles had to be carefully placed in the rack in order to prevent them from falling out, and also that the metal rod at the outer edge was the only thing intended or used to prevent bundles from falling therefrom.

Woolridge, the owner of the bag and crupper, testified that the bag was a small gunny-bag and that not more than a fourth of the space therein was taken up by the crupper; that the crupper was of the character known as the Ellis crupper, made of leather and steel. and that its weight did not exceed five pounds. The witness was not asked as to the width or length of the crupper, but said it was of the usual size. Jurors are not expected to lay aside their common sense or experience upon entering the jury box, and as it is presumably true that some of the jury in this case were farmers and all of them sufficiently familiar with horses and harness to know, even without proof on the subject, the dimensions of a crupper of the usual size, they must have realized from their own knowledge and experience that it is not ten and a half inches in width or thirty-four inches in length, and, therefore, that it could have been placed in the rack of appellant's car without projecting over the sides thereof, and was, therefore, the kind of package for which the rack was designed. So, in addition to the testimony of appellee as to the insufficiency of the rack, the fact that the package fell from it, together with the further fact, that the metal rod, the only thing in use to prevent a package from falling out of it, did not extend enough above the bottom of the rack to serve such purpose, furnished evidence from which the jury

had the right to conclude that the rack was defective and insufficient to prevent small packages, properly placed therein, from being thrown out by the ordinary movement of the car. It is, therefore, patent that there was evidence authorizing the submission of the case to the jury and on this point they were properly instructed as follows:

"Unless the jury believe from the evidence that the defendant, in the construction and maintenance of the rack, from which the package fell, failed to exercise the highest practicable degree of care, to make it sufficient to prevent small packages properly placed in the rack from falling out by the ordinary movement of the car, and by reason thereof, the package fell and struck the plaintiff and injured her, they should find for the defendant."

In reaching the above expressed conclusion we have not overlooked the evidence of some of appellant's witnesses that the racks used in the car in question were of standard quality and sufficient for the use to which they were dedicated; but this evidence hardly goes to the extent of showing that the racks were in general use in such cars at the time appellee was injured, or equal to other standard racks in general use on other like interurban lines. On the contrary, according to appellee's evidence and the admission of some of appellant's witnesses, they have been supplanted on appellant's railroad by others containing guard rails three or four inches in height, which prevent the slipping of any kind of package from the racks that is of a size to be laid therein. It is true appellant complains of the introduction of the evidence as to this change in racks, but as complaint thereof was not made a ground for a new trial, the ruling allowing its admission cannot now be reviewed by us.

We do not feel justified in saying that the verdict is contrary to law or flagrantly against the evidence. To say that a verdict is contrary to law is to declare that it is contrary to the instructions of the trial court, whether right or wrong in their statement of the law; Lynch v. Sneed Iron Works, 132 Ky., 241; and to say of a verdict that it is flagrantly against the evidence, means that it is palpably against the evidence. The fact that the evidence is conflicting or that this court would have made a different finding on the facts, or that, in its opinion, the verdict is against the weight of the evidence, furnishes

no cause for setting it aside; nothing short of its being clearly and palpably against the evidence, will give the Appellate Court authority to disturb it on this ground. Empire Coal & Mining Co. v. McIntosh, 82 Ky., 334; McCoy v. Martin, 4 Dana, 580; Chiles v. Jones, 3 B. Mon., 51; Page v. Carter, 8 B. Mon., 192.

It only remains to consider appellant's final contention as to the alleged excessiveness of the verdict. On this question we have first, the uncontradicted testimony of appellee that she was injured by the falling of the crupper from the car rack upon her shoulder and arm; and if, as testified by Woolridge, and no one contradicts, the crupper was composed in part, of steel, and its weight was five pounds, it was apparently heavy enough to have inflicted upon appellee the injuries complained of. Added to this evidence is the further testimony of appellee that the injured arm and shoulder began at once to cause her pain and suffering which continued until she reached her home and for many successive weeks and months; that of her family physician, that upon calling to see her the morning following the accident, he found her shoulder and arm swollen and bruised and that she was then suffering much pain; and, finally, his further testimony and that of another physician as to the subsequent hurtful developments in her condition, resulting from the injury, during and following the latter's several months' special treatment of her case. This evidence leaves little doubt as to the nature and extent of the injuries she sustained.

The two physicians mentioned agree in the statement that her injuries were caused by a blow upon or hurt of some sort to the shoulder or arm, causing atrophy of the arm, which so stiffened the muscles as to prevent her from raising it and rendered it practically useless in the performance of her household duties and such work as she had theretofore been accustomed to do in assisting her husband in his occupation of gardening. According to the further testimony of these two physicians, the injuries sustained by appellee could have been caused in the manner claimed by her, and they were of such a character as to cause her almost continuous suffering, permanently impair the use of her arm and seriously affect her nervous system and general health to such an extent as to cause a partial loss of her vigor and reduce her weight fifteen or twenty pounds. It also appears from

the testimony of appellee's family physician that, prior to the infliction of her injuries, she had enjoyed the best of health and was an unusually vigorous woman. Some of the members of the family and several of her neighbors corroborated the physician on this point and also as to the pain suffered by appellee from her injuries and the disability resulting to her arm therefrom.

The only contradictory evidence offered by appellant as to the character of appellee's injuries and the effect thereof upon her arm and general health, was furnished by the testimony of its physician, which was to the effect that the injuries could not, in his opinion as a physician, have been received by appellee in the manner claimed; nor could they in his opinion have hurtfully affected her general health. He admitted that he found from the examination he made of appellee that she seemed to have lost the power to elevate the injured arm, but gave it as his opinion that this resulted from non-use of the arm, which might have been caused by constantly carrying it in a sling or other support. He further testified, that in his examination of appellee's shoulder and arm, he failed to discover anything which indicated that she had received such an injury to either as could have caused any impairment in its use.

We think the weight of the evidence on the subject of appellee's injuries is to the effect that, if not as great as claimed by her, they at least were of so serious and permanent a character as to entitle her to some portion of the damages claimed in her petition. She was but forty-two years of age at the time of receiving the injuries, and if they have caused her practically continuous mental and physical pain and suffering and resulted in the permanent impairment of the use of her arm and of her ability to earn money to the extent shown by much of the evidence, we are not prepared to say that the amount awarded her by the jury is so large as to authorize us to declare it excessive. While at first blush it may seem out of proportion to the injury received, yet it is not so grossly excessive as to exceed the bounds of reason or to appear to have been the result of passion or prejudice on the part of the jury. It is not to be overlooked that this is the second verdict of damages recovered in this case by appellee, and while greatly in excess of the amount fixed by the first verdict, the fact that the time intervening between the two trials, has shown no improvement in her condition, but serves

to confirm the judgment of the two physicians and others, testifying in her behalf, as to the permanent character of her injuries and the consequent permanent impairment of her ability to labor and earn money; and this fact doubtless had much to do with the increase in the amount of damages allowed. At any rate, we do not feel at liberty to disturb the verdict.

Judgment Affirmed.