## Interstate Coal Company v. Shelton, Administrator.

(Decided October 2, 1914.)

### Appeal from Knox Circuit Court.

1. Master and Servant—Safe Place to Work.—The master must use ordinary care to furnish a servant a reasonably safe place to work, considering the purpose for which the place is intended and the strains that may be reasonably anticipated.

2. Master and Servant—Failure of Servant to Exercise Ordinary Care—When Servant Cannot Recover for Injury.—If the servant subjects a platform upon which he is at work to a strain to which, in the exercise of ordinary care, he should not have subjected it, and but for this would not have been injured, he cannot recover.

3. Master and Servant—Servant Not Required to Make an Inspection Before Beginning Work—May Assume that the Master Has Made the Place Reasonably Safe for Work.—The servant had the right to assume that the master had used ordinary care to make the platform reasonably safe for the work required of him. The servant was not required to make an inspection of the platform before beginning his work for the purpose of ascertaining whether it was reasonably safe. If, however, its dangerous character was so obvious as that a person of ordinary understanding and judgment, situated as he was, could, by the exercise of ordinary care, have discovered the danger in time to have prevented his death, there should be no recovery.

4. Evidence — Expert Evidence — Will Not Authorize a Reversal, Although Incompetent, if Not Prejudicial.—The admission of expert evidence, although incompetent, will not authorize a reversal of the judgment if its introduction was caused by the act of the party complaining in himself first introducing expert evidence upon the same question, and the incompetent expert evidence, improperly admitted, was introduced for the purpose of merely refuting and contradicting what had first been testified to by the witness or witnesses of the complainant.

BLACK, BLACK & OWENS for appellant.

J. M. ROBSION for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was brought by the appellee, Joe Shelton, administrator of the estate of Lee Hamblin, deceased, to recover of the appellant, Interstate Coal Company, damages for the death of his intestate; it being alleged in the petition that his death was caused by the negligence of the appellant in failing to provide him, as its employe, with a reasonably safe place in which to perform his work. When killed Hamblin was engaged with other employes of the appellant in making repairs upon its coal tipple, and while standing upon a platform used in making the repairs and attempting to remove an iron shaft of the tipple in order that it might be replaced by a larger shaft, a plank of the platform upon which he was standing slipped from a girder upon which it rested, causing him to be thrown to a coal car under and twenty or twenty-five feet below the platform, which caused his death. The repairing was done at night and the only light employed was what was furnished by miners' lamps in the caps of the workmen. Appellant's foreman, Trosper, was directing the repairs, and when Hamblin and his assistant, Dawson, had the shaft on the platform Hamblin said to Dawson that he would throw it off. Dawson said: "No, it might break it." Hamblin then replied, no, that was the way that he and Trosper had done before, and to this Trosper, who was in hearing, said nothing. When thrown by Hamblin the shaft came in contact with the end of the plank which it displaced and thereby caused Hamblin to fall and be killed.

The answer of appellant denied the negligence complained of and alleged that the death of Hamblin was the result of his own negligence.

There have been two trials of this case in the court below. On the first trial appellee recovered of appellant a verdict and judgment for six thousand dollars damages. On appeal this judgment was reversed for various errors occurring on the trial in the lower court. On the second trial appellee recovered a verdict and judgment against the appellant for six thousand dollars, and the case is again before us for review upon appeal from the last judgment.

The opinion of this court on the first appeal is reported in 152 Ky., 92, and the following excerpts therefrom will so fully present the issues made by the pleadings and evidence and the salient facts connected with

the accident, as to render a more elaborate statement of them than we have here given unnecessary:

"This suit was brought by his (Hamblin's) personal representative to recover for his death on the ground that the company was negligent in failing to furnish him a reasonably safe place to work; that the planks in the platform were not nailed, and that the structure was a dangerous one for the purpose for which it was intended. The proof introduced on the trial conduced strongly to show that Hamblin's fall was due to the plank on which he was standing, slipping until the end opposite to the place where the shaft was thrown off had slipped off the girder and that this plank was not fastened or secured in any way. There was proof for the defendant that there was a collar on the shaft; also some other attachments, and that there was a scar on the end of the plank, indicating that the shaft as it fell struck the plank, and so caused it to fall. There was also proof for the defendant that the planks constituting the floor of, the platform were securely nailed with large nails six inches long. * * * While it is true that Hamblin would not have been hurt if he had not thrown the shaft off, it is also true that throwing the shaft off would not have caused any trouble if the plank had been securely fastened. Trosper, under whom he was working, had done the work in the same way on a previous occasion, and Trosper, who was in charge of the work, made no objection to his suggestion that they should throw the shaft off. It can not be said, therefore, that he was acting outside of the scope of his duty, and the circuit court properly refused the peremptory instruction asked by the defendant. * * * The plaintiff proved by one witness (Buchanan) that he was working on this platform about a week before the accident, and while working there had occasion to move one of the planks of the platform. He could not state definitely which one; and that this plank was not nailed but loose. * * * There was sufficient evidence to take the case to the jury." * * *

It is insisted for appellant: (1) That appellee failed to prove the negligence charged in the petition, and that appellant was, therefore, entitled to a peremptory instruction; (2) that the injury was caused by the decedent's own negligence; (3) that the verdict is flagrantly against the evidence; (4) that certain evidence introduced as expert testimony should have been excluded from the consideration of the jury, because the witnesses

furnishing it were not experts and because the evidence should have been given in chief and not in rebuttal.

The first contention can not prevail. The evidence introduced in appellee's behalf upon the last trial as to the unsafe and dangerous condition of the platform caused by the presence thereon of the loose or unsecured plank, and the manner in which the decedent met his death, was substantially the same as was furnished by his witnesses upon the first trial, and the opinion on the former appeal is clear and emphatic in the statement that this evidence was sufficient to take the case to the jury. Indeed, we may add that the fact that the plank slipped from the girder and caused Hamblin to fall, of itself furnished some evidence that it was not nailed to the platform and was sufficient to take the case to the jury upon the question of appellant's negligence.

Appellant introduced on the last trial in support of its defense, that the death of Hamblin was caused by his own negligence in throwing the shaft and causing it to strike and loosen the plank that produced his fall, all the witnesses who testified on that subject in its behalf on the first trial, and in addition a new witness, Blaine Parker, who was not present at the first trial. Frank Burch testified for appellant on the last trial, as he did on the first, that five or six weeks before the death of Hamblin he nailed some planks on the tipple platform and that there were then no loose planks on it, and this statement was again partially corroborated by his brother. Frank also produced on the last trial a plank which he said was the eighth plank in the platform at the time Hamblin was killed. This plank contained in one end a nail by which he claimed it was fastened to the platform when he removed it during the last trial, which was more than two years after Hamblin's death. Evidently this testimony had no weight with the jury as, according to all the other witnesses, there were not eight planks but only five or six in the platform at the time of Hamblin's death. And, besides, the nail in the plank produced was not rusty or discolored, as would have been its condition had it been driven in the plank two years before, but a bright new nail and smaller than those all the other witnesses agreed had been used in the platform. If there were eight planks on the platform when Burch brought this plank into court, it is fairly evident that the plank produced had been placed there and the nail driven in it long after Hamblin's death.

The witnesses, professing any knowledge on the subject, said the plank which caused Hamblin's fall was about the middle of the platform; and while it is true appellant's new witness, Blaine Parker, testified that he saw this plank immediately after Hamblin's fall, when it was replaced on the platform, and that it had in each end a nail or nails which were bent as though they had been suddenly and violently wrenched from the girders, he was uncorroborated in this by any other witness and flatly contradicted by Buchanan, the present jailer of Knox County, who said he saw the plank when it was seen by Parker, and in fact handed it to Parker; that he then examined it and there were no nails in it. Buchanan is the same witness who testified on both trials that a week before the death of Hamblin he went upon the platform with a forge to repair the tipple, and that in order to keep one of the four legs of the forge from going in a crack between the planks of the platform he slipped one of the planks, which he found to be loose, against the other.

It is obvious from what has been said that there was no material variance in the evidence heard upon the two trials and that on the last, as on the first, there was much proof on each side of the main issue; that of appellee being to the effect that the platform upon which the decedent was required to work was, by reason of the loose plank, a dangerous place for the performance of his duties; that the loose plank would not have been moved from its supports in the platform by the shaft coming in contact with it when thrown by Hamblin if it had been properly nailed thereto; and that the negligence of appellant in failing to thus secure the plank was the proximate cause of Hamblin's death. On the other hand, appellant's evidence tended to show that the plank in question was securely fastened to its supports; that the weight of the shaft, upon coming in contact with the end of the plank when thrown by Hamblin, was sufficient to have torn it from its fastenings, and that his act in thus attempting to remove the shaft from the platform constituted negligence which so contributed to his death that but for such act he would not have been killed.

It was manifestly the duty of the appellant to use ordinary care to furnish Hamblin a reasonably safe place to perform the work required of him. He had the right to assume that this duty had been or would be performed

by appellant. Hamblin was not required to make an inspection of the platform before beginning his work for the purpose of ascertaining whether it was reasonably safe. If, however, its dangerous character was so obvious as that a person of ordinary understanding and judgment, situated as he was, could, by the exercise of ordinary care, have discovered the danger in time to have prevented his death, there should have been no recovery, for in such case it would have been caused by his own negligence.

If the plank was, in fact, unnailed to its supports, there is no evidence whatever to the effect that this was so obvious as that it ought to have been known to Hamblin. Indeed, we can well understand why he could not have discovered the defect or danger, as the platform was shown to have been covered by and its cracks practically filled with coal dust, and his work had to be performed by the uncertain light furnished by the lamps carried in the caps of himself and assistant.

On the whole case we see no reason to depart from the conclusion expressed in the opinion on the former appeal that the case should have been submitted to the jury, and this being true, it follows that in our opinion the trial court did not err in overruling the appellant's motion for a peremptory instruction. It could not properly have been granted, either upon the ground of the failure of proof of negligence on the part of appellant, or upon the ground that the decedent's death was caused by his own want of ordinary care.

Nor is the case one in which it can be said that the verdict is flagrantly against the evidence. "To say of the verdict that it is flagrantly against the evidence means that it is palpably against the evidence. The fact that the evidence is conflicting or that this court would have made a different finding on the facts or that in its opinion the verdict is against the weight of the evidence, furnishes no cause for setting it aside; nothing short of its being clearly and palpably against the evidence will give the appellate court authority to disturb it on this ground." L. & I. R. v. Roemmellee, 157 Ky., 84; Empire Coal & Mining Co. v. Mackintosh, 87 Ky., 334; McCoy v. Martin, 4 Dana, 580; Childs v. Jones, 3 B. Mon., 51; Page v. Carter, 82 B. Mon., 192. Tested by this rule, no one, familiar with the weight and effect of evidence, can say that the verdict here is clearly and palpably against the evidence.

We are unable to find any sufficient reason for sustaining appellant's complaint of the admission of the evidence furnished by appellee's witnesses, McNeil, Hays and Jackson. They were permitted to testify, in substance, as to the strength of oak plank, such as was used in the platform from which the decedent fell, to sustain the weight of such an object as the shaft on appellant's tipple; the quality and size of nails required to securely fasten and hold such plank, and to what weight or force they would have to be subjected, when properly nailed, to wrench them from their supports, etc. Before answering as to these matters all three of the witnesses named appear to have fairly qualified as experts. They are carpenters and have had an experience of from sixteen to forty years in working in timber and with nails, and it is not to be denied that their testimony shows them to possess a wide range of knowledge, both practical and scientific, upon the matters with respect to which they were, questioned. But aside from what has been said we do not think the admission of the testimony of these witnesses can be complained of by appellant or that it constitutes reversible error, because they were introduced for the purpose of refuting and contradicting what had first been testified to by appellant's witness, English, who appears to fall short of being himself an expert. Having by the introduction of English and his testimony with reference to the same matters opened up this line of evidence, appellant is, we think, in all fairness estopped to insist that appellee was improperly permitted to introduce the three witnesses named in rebuttal. It is true that in the opinion on the former appeal we held that the evidence given at appellee's instance by the witnesses Trosper and Buchanan, and perhaps two or three other witnesses, along the same lines, should have been excluded on the trial and should not be admitted on the last trial, but this was because what they said were mere expressions of opinion from non-experts.

The principal ground given by the court for the reversal of the judgment on the first appeal was error in the instructions. Upon the last trial the instructions were made to conform to the opinion, and are, therefore, free from error and not complained of by appellant.

No reason being shown by the record for a reversal, the judgment is affirmed.