## Louisville & Nashville Railroad Company, et al. v. McArthur.

(Decided March 3, 1915.)

### Appeal from Madison Circuit Court.

1. Railroads—Emission of Sparks from Engine Causing Fire—Negligence of Railroad Company in Failing to Provide Sufficient Spark Arresters.—Where, in an action against a railroad company for the destruction of the plaintiff's brick plant and machinery by fire, caused by the alleged negligence of a railroad company in allowing sparks to escape from its locomotive, the plaintiff's evidence conduced to prove that sparks and cinders were accustomed to escape in large quantities from its locomotives in passing the brick plant; that the plant could not have been fired by any agency in it or on the premises; that it might reasonably have been and probably was ignited by a spark or cinder from the defendant's locomotive passing twenty minutes before the plant was discovered to be burning, which greatly puffed, labored and threw off much smoke at the time; that there was an unusually high wind blowing from the defendant's railroad track in the direction of the brick plant, which was powerful enough to have carried sparks such as are emitted from a railroad locomotive as far as was the plant from the railroad track; that the fire started in the roof of the brick plant and was discovered

within twenty minutes after the passing of the train, and that the locomotive of such train was not in use on the defendant's railroad for several weeks after the brick plant was burned, these facts required the submission of the case to the jury and authorized a verdict for the plaintiff. Consequently the refusal by the trial court of a peremptory instruction directing a verdict for the defendant was not error.

2. Damages—Instructions—May Submit to Jury Question of Value of Articles of Property in Attached List, Without Seriatim Mention of in Instruction.—An instruction telling the jury that if they found for plaintiff they should allow him what they might believe from the evidence was the fair and reasonable market value of such machinery or articles mentioned in the evidence and "shown by the list hereto attached, if any, as the jury may believe from the evidence were totally destroyed, and what they may believe from the evidence was the difference, if any, between the fair and reasonable market value, just before and just after the fire, of such of said machinery or articles as the jury may believe from the evidence were only damaged and not totally destroyed by the fire; but if any damages are allowed the plaintiff the total should not exceed $6,098.50, the sum claimed by the plaintiff in the petition," is not open to the criticism that it singled out and gave undue emphasis to certain parts of the evidence.

3. Appeal—Trial—Verdict—When It Will Not Be Declared Fragrantly Against the Evidence.—A verdict will not be declared flagrantly against the evidence unless it is palpably against the evidence. The fact that the evidence is conflicting or that the Court of Appeals would have made a different finding on the facts, or that in its opinion the verdict is against the weight of the evidence, will furnish no cause for setting it aside; nothing short of its being clearly and palpably against the evidence will give authority to disturb it on this ground.

4. Appeal—Damages—Excessive Damages.—A judgment will not be reversed or a new trial granted because of excessive damages awarded by a jury, unless the damages should be so great and out of proportion to the injury or loss sustained, as to strike the mind at first blush as having been superinduced by passion or prejudice on the part of the jury.

B. D. WARFIELD, BURNAM & BURNAM and WALLACE & HARRISS for appellants.

W. S. MOBERLY for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is an appeal from a judgment of the Madison Circuit Court entered on the verdict of a jury awarding appellee $4,750 in damages against the appellants, Louisville & Nashville Railroad Company and Louisville &

Atlantic Railroad Company, for the destruction by fire, March 24, 1913, of its machinery, appliances and other property, constituting a plant for the manufacture of brick, alleged to have been caused by sparks escaping from a locomotive of the appellants.

Appellants sought a new trial in the court below and now ask a reversal of the judgment upon the following grounds: (1) That the trial court erred in refusing to give a peremptory instruction at the conclusion of appellee's evidence, and again after the introduction of all the evidence, directing a verdict for them; (2) that the verdict is flagrantly against the evidence; (3) that the court erred in instructing the jury; (4) that the amount of damages awarded by the verdict is grossly excessive.

It is alleged in the petition that the appellant, Louisville & Nashville Railroad Company, owns the stock, is in control of and operates the railroad and cars of the appellant, Louisville & Atlantic Railroad Company, and these averments are not denied by the joint answer filed by the appellants.

The facts connected with and surrounding the burning of appellee's brick plant are, in brief, as follows: The property is situated at Searcy, a station on appellants' railroad in Madison County, at a distance of about fifty feet from the railroad and just east of the top of a long grade which extends from Richmond on the west to this point. There is some dispute as to where the highest point of the grade is located, some of the witnesses saying it is thirty feet and some as much as fifty or sixty feet west of the brick plant. At any rate, it is safe to say that the top of this long grade is just west of the plant. Some of the evidence tended to show that, in pulling the grade, it was the custom for steam to be shut off from the locomotives just before reaching a point in direct line with the brick plant. Other evidence tended to show that it was not the custom to shut off the steam until the locomotives got well over the top of the grade. It is not material, however, whether the top of the grade is thirty or sixty feet west of the brick plant, for in pulling a train of the usual number of cars to and over the top of the grade it is altogether reasonable to assume that the application of steam would be necessary until the locomotive gets several times its length over and beyond the top of the grade, and, consequently, beyond the brick plant, in order to pull a suffi-

cient number of the cars in the rear to where the train would run down grade on the other side without need of the steam's propelling power. In other words, the bulk of the train load must also pass the divide before the steam of the locomotive can be shut off. This being so, if the locomotive be one from which sparks and cinders can escape, they would necessarily be thrown out by it until it got on a line with or beyond the brick plant.

It is patent from the evidence that the fire by which appellee's brick plant was destroyed started in the roof of the building or shed covering it, there being at the time an unusually high wind blowing from the railroad toward the plant, and the fire was first discovered twenty minutes after appellants' engine No. 10, attached to a freight train, passed going eastward. Mrs. Brotherton discovered the fire from the front porch of her residence, which was situated on the opposite side of the railroad from the brick plant and at a distance of 150 yards therefrom. She had seen the freight train pass twenty minutes earlier and observed that the locomotive was loudly puffing and emitting a great quantity of smoke in reaching and crossing the top of the grade. Upon discovering the fire she immediately gave the alarm, and Robert Brotherton and others went to the fire, but it rapidly gained such headway that nothing could be done to extinguish it or save the plant.

It conclusively appears that no one was at the time of the discovery of the fire in or about the building; that there had been no fire in or around it for five or six months, probably longer, and that the weather was extremely dry. According to the further testimony of the witness, Mrs. Brotherton, engine No. 10, with which she claimed to be familiar from so often seeing it pass her residence, disappeared from the railroad immediately after that fire and was not again brought into use on the railroad for a month or more, and that when it returned it was newly painted.

T. S. Brotherton also testified that he was in the employ of appellee as watchman for the brick plant and was so engaged at the time of the fire; that it was his custom to inspect the plant three times a day; that the property was in good condition on the day of the fire, with the exception of one or two leaks in the roof, against which the machinery in the building was fully protected; that the wind on the day of the fire was blow-

ing from the railroad track toward the brick plant and was as hard as he ever felt or heard it. He also testified that appellants' locomotives threw out at night large quantities of sparks and cinders in the vicinity of the brick plant just before and just after the fire, and that on one occasion a cinder fell on his hand and burned it; that locomotive No. 10 threw out sparks and cinders in passing the brick plant at night about the time it was burned; that locomotive No. 10 was not in use by appellants for a considerable time after the brick plant was burned, and when he saw it after such interval of non-use it was newly painted. It appears from appellants' evidence that this locomotive was in the Richmond shops for some kind of repairs March 8-14-16, 1913, but a few days before the fire, and it was not in use on the road from the date of the fire until April 19, 1913. These facts give some corroboration to appellee's evidence that its condition was so defective as to permit the escape of sparks at the time the brick plant was burned.

R. J. Brotherton testified that he saw locomotive No. 10 as it passed the brick plant just before the fire, and that it was then puffing and laboring greatly in reaching the top of the grade; that this locomotive and others belonging to appellants were accustomed to throw out large quantities of smoke and cinders in passing the brick plant, and that cinders and sparks could plainly be seen at night. In addition to the three Brothertons mentioned, appellee introduced as a witness James Detheridge, who testified, in substance, that he had often, near the time of the fire, and both before and after its occurrence, seen locomotives in passing the brick plant at night emit quantities of sparks and cinders.

On the other hand, appellants introduced nine witnesses, four of whom knew nothing about the origin of the fire, or whether appellants' locomotive, in passing the brick plant twenty minutes before it started, did or did not emit sparks. Two of the four witnesses referred to, Douglass and Daugherty, only testified as to the value of the property destroyed. The third witness, Hills, gave testimony as to the kind of spark arresters used by appellants upon their locomotives, and that they were of the most modern and approved quality. Hayden, the fourth witness, who was a supervisor of appellants, and formerly the section foreman in charge of the track by the plant, testified that he was at Moberly,

a mile and a quarter from the plant, when the train in question passed that place; that it was a light train and. was not, at the time of passing Moberly, throwing any sparks. The other five witnesses introduced for appellants composed the crew of the train, sparks from which it was claimed burned the brick plant. These witnesses were Larkin, the engineer; Roberts, fireman; Benton, conductor; Pullin and Richardson, brakemen; each of whom testified that engine No. 10, on the occasion of the fire, was not throwing sparks; that this engine had been in use for quite a while before and after the fire, both in the daytime and at night; that while in the daytime they could not see sparks escaping, yet they could tell whether any did escape, as they would be struck by them while in the performance of their duties on the train; and that they had at no time seen any sparks escaping from locomotive No. 10, other than such as necessarily escape from all steam engines.

It will readily be seen from what has thus far been said of the evidence that it was conflicting; but that of appellee conduced to establish the following material facts: (1) That the brick plant could not have been fired by any agency in the plant or on the premises; (2) that it might reasonably have been, and probably was, ignited by a spark or cinder from appellants' locomotive No. 10, which passed twenty minutes before the plant was discovered to be burning, hauling a freight train, and seemed to be puffing, laboring and throwing off much smoke in reaching the top of the grade; (3) that this locomotive and others of appellants, in pulling this steep grade, before and down to the date of the fire, had frequently been seen to similarly puff and labor, and at night emit large quantities of sparks and cinders; (4) that on the day of the fire, and at the time of its occurrence, there was an unusually high March wind blowing from appellants' railroad track in the direction of the brick plant, which was powerful enough to have carried sparks, such as are emitted from a railroad locomotive, as far as was the plant from the railroad track; (5) that the fire started in the roof of the brick plant and was discovered within twenty minutes after the passing of the train; (6) that locomotive No. 10 was not in use on appellants' railroad for several weeks after the brick plant was burned, during which time it was presumably

undergoing repairs, as when again put in use by appellants it had the appearance of being freshly painted.

It is manifest that the foregoing facts presented a prima facie case for appellee, entitling him to have the jury pass upon the question of appellants' liability for the loss he sustained in the destruction of his plant; and such has been our uniform ruling where the evidence furnished a state of case like that here presented. In L. & N. R. Co. v. Gutman, 148 Ky., 235, a case in which the facts were very similar to those here shown, except that the house charged to have been burned by sparks from the railroad engine was situated 195 feet from the railroad track, we said:

"The evidence was conflicting as to the origin of the fire, but much of that furnished by appellee's witnesses strongly tended to prove that the burning of the house was caused by sparks or cinders from the engine of appellants' freight train and, notwithstanding the contrary evidence of appellants' witnesses, the jury had the right to accept the testimony of appellee's witnesses in preference to that of appellants'. In the case of Cin., N. O. & T. P. Ry. Co. v. Cecil, 28 R.; 830, the facts were very similar to those in the case at bar, though not so strongly conducing to prove that the burning of the car destroyed in that case was caused by sparks from the railroad company's engine. In the opinion it is said: 'No one saw the sparks fall on or in or around the car in question, and it must be admitted that the evidence that the fire was caused by sparks from the engines of appellant's trains is exceedingly meager; but we have reached the conclusion, in the light of the cases heretofore decided, that this was a question for the determination of the jury. In the case of Louisville & Nashville R. R. Co. v. Samuel's Ex'or., 22 Ky. L. R., 303, after stating the rule as to the non-liability of railroads for fire resulting from escaping sparks, if the engines were furnished with approved spark arresters, it is said:

' "But it is equally well settled that in an action against a railroad company to recover for loss by fire alleged to have resulted from negligence in operation, or for failure to have the spark arrester in proper condition, testimony showing that sparks and cinders escaped from the locomotive in unusual quantities was competent, and will, of itself, warrant the presumption that the arrester was out of order, or was improperly

adjusted, and that the defendant was consequently guilty of negligence in this regard.'' (Louisville & Nashville R. R. Co. v. Taylor, 92 Ky., 52; Kentucky Central R. R. Co. v. Barrow, 89 Ky., 643.) And this same principle was enunciated and upheld in Mills v. Louisville & Nashville R. R. Co., 25 Ky. L. R., 488.' It appears from the evidence commented on in the opinion, *supra,* that the nearest point that the engine came to the car that was burned was 154 feet, and that the night was calm, with some snow on the ground. In view of these facts it was argued in that case by counsel for the railroad company that it was a physical impossibility for the sparks from the engine to have ignited the car, but in response to this contention the court said: 'It seems to us, however, this was a question properly for the jury. It is true, the evidence conduced to show that the engines were fitted with lawful spark arresters, but this may not have been credited by the jury, who were, after all, the arbiters of the facts; and, taking the testimony on this branch of the case as a whole, we are not able to say there was no evidence from which the jury would be warranted in concluding that the fire was caused by the sparks from the engines hauling appellant's freight train; and if these sparks were as big as the end of a man's thumb, as testified by Lawrence Rogers, this would show the spark arresters were not in good condition.' ''

It follows from what has been said that, in our opinion, the refusal of the peremptory instruction asked by appellants was not error. It is further our opinion that the reversal of the judgment appealed from on the ground that the verdict is flagrantly against the evidence would be unauthorized. As said in L. & N. R. Co. v. Eckman, 137 Ky., 331:

''Our duty goes no further than to determine whether there was evidence to support a verdict, and our decision on that point is not to be controlled by our opinion as to whether the verdict is in accordance with or against the weight of the evidence.''

The fact that much of appellee's evidence is flatly contradicted by that of appellants', or that the latter's witnesses outnumber those of appellee, will not justify interference from us with the verdict upon the ground indicated.

"To say of a verdict that it is flagrantly against the evidence means that it is palpably against the evidence. The fact that the evidence is conflicting or that this court would have made a different finding on the facts, or that in its opinion the verdict is against the weight of the evidence, furnishes no cause for setting it aside; nothing short of its being clearly and palpably against the evidence will give the appellate court authority to disturb it on this ground." L. & N. R. Co. v. Roemmele, 157 Ky., 84; Empire Coal & Mining Co. v. McIntosh, 82 Ky., 334; McCoy v. Martin, 4 Dana, 580; Childs v. Jones, 3 B. Mon., 51; Page v. Carter, 8 B. Mon., 192.

Appellants' complaint of the instructions cannot prevail. One objection urged to them is that they are predicated upon the theory that there was evidence furnished by appellee, which, if believed by the jury, would authorize a verdict for the latter; whereas, it is appellants' contention that there was no evidence to authorize such a belief or verdict on the part of the jury. This is but a reiteration of the contention that appellants were entitled to a peremptory instruction on the ground of failure of proof. As this contention has already been overruled it need not again be disposed of. It is, therefore, sufficient to say that the objection is without merit.

Again, it is objected by appellants that the court erred in attaching to and making a part of the instructions a list of the machinery and other articles of property alleged by appellee in his petition to have been destroyed or damaged by the fire. This objection is, in our opinion, also untenable. It goes especially to instruction No. 4, which is as follows:

"If the jury find for the plaintiff they should allow him what they may believe from the evidence was the fair and reasonable market value of such of the machinery or articles mentioned in the evidence and shown by the list hereto attached, if any, as the jury may believe from the evidence were totally destroyed, and what they may believe from the evidence was the difference, if any, between the fair and reasonable market value, just before and just after the fire, of such of said machinery or articles as the jury may believe from the evidence were only damaged and not totally destroyed by the fire; but, if any damages are allowed the plaintiff, the total should not exceed $6,098.50, the sum claimed by the plaintiff in the petition."

The instruction does not, as claimed by appellants, specify certain facts shown by the evidence or give undue emphasis to any portion of the evidence. It was necessary either to make the list of machinery and articles a part of the instruction by attaching it thereto and identifying it, as was done, or by copying them seriatim in the instruction, which would have given the instruction unreasonable length and probably made it more confusing than to attach and identify the list of articles. The inventory of articles is precisely as set out in the petition and as introduced in evidence. Evidence was introduced on the trial as to each item of the list, showing what of them were entirely destroyed in the fire and the value thereof, and such of them as were injured and the extent of such injury, as well as the difference in the value of those injured in their condition immediately before and after the fire. On the whole, we think the plan followed by the court in this instruction was as good as could have been adopted in submitting to the jury the various items of damage in dispute between the parties.

The only matter remaining to be considered is appellants' complaint that the verdict is excessive. It appears from the evidence of appellee that the brick plant was erected and put in operation about three years before the fire; that it had not been operated for a year before the fire, and was purchased by appellee from the first owner six or seven months before the fire at the price of $12,000.00, paid in Tennessee land; that the machinery and appliances were of modern character, good quality and well preserved, and the plant as a whole was excellently furnished and equipped for the work of manufacturing brick and tile. The witnesses as to damages differed very widely in their testimony, those of appellee fixing the value of the machinery and other articles of property, immediately before they were burned, at from $6,000.00 to $8,000.00, and after the fire, the value of what was not wholly destroyed at but a few hundred dollars, practically nothing. Among the witnesses who thus testified for appellee were himself, W. B. Kincaid and George English, all of whom were familiar with the value of such machinery and property.

The witnesses introduced by appellants fixed the value of the property destroyed and injured by the fire much lower than did the appellee's witnesses. According

to their testimony, appellee's loss could not, in any event, have amounted to $2,000.00. Among the witnesses introduced for appellants were Daugherty and Douglas, who went out to the plant after the fire, at appellants' request, with a view of arriving at appellee's loss, in doing which they made an estimate of the value of the machinery and articles burned, injured or destroyed, as before and after the fire, and Douglas fixed the value of the articles burned, injured or destroyed, immediately before the fire, at $5,971.00, but declined to express an opinion as to their value following the fire. It is proper to say that appellee's witnesses who testified as to values were familiar with the machinery and articles destroyed or injured by the fire, while those testifying for appellants seemed to have had no acquaintance therewith.

Considering the evidence as a whole, we incline to the opinion that the amount awarded appellee by the verdict of the jury, $4,750.00, will liberally compensate him for the loss he sustained by the fire, but do not feel justified in saying that it is so unreasonable as to be grossly excessive in amount; in view of which and of the fact that the question of damages, as well as other issues of fact, were fairly and, as we think, correctly submitted to the jury by the instructions, we do not feel at liberty to disturb the verdict.

Wherefore, the judgment is affirmed.