## McNeill, et al. v. Choate.

(Decided February 28, 1922.)

### Appeal from Fulton Circuit Court.

Landlord and Tenant—Question of Fact—Findings.—After making a written rent contract for a farm and executing a note for $1,250.00

for the year's rent the tenant insisted in this case that pursuant to the terms of the written contract providing that in case back water should overflow the land after May 1st the tenant had the option of surrendering the land and cancelling the note and contract, the tenant did offer to surrender the land and at the time of said offer entered into a new verbal contract with the landlord, whereby he was to have the use of the farm for the year for $625.00; the tenant and his witnesses testified in substance to this effect, while the landlord and his witnesses testified that there was no such verbal contract, and that there was no tender or offer to surrender the farm by the tenant: Held, it being a question of fact properly submitted to the jury as to whether there was a verbal contract and the jury having determined from the evidence that there was no such contract, its finding is conclusive.

W. J. WEBB, F. S. MOORE and DEE McNEILL for appellants.

H. T. SMITH and S. D. STEMBRIDGE for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellee Choate owns a tract of farming land of more than one hundred acres, situated in Mississippi county, Missouri, just across the Mississippi river from Fulton county, Kentucky. Appellants, Charlie and Jesse McNeill, leased this tract from Choate at the rate of $12.50 per acre for the year 1919, to be cultivated in corn, and as the cleared portion of the tract was estimated at one hundred acres, appellants gave to Choate their note for $1,250.00, due January 1, 1920, for said rents. The rent contract was in writing and contained the following stipulation:

"It is agreed by J. E. Choate that if the government levee should break or back water should overflow this land after May 1, 1919, and allow the water to overflow this tract of land, I will give up the rent note and assume possession of the premises, at the option of the second party."

The McNeills took possession of the farm and started to cultivate it, but about the first of May water covered some part of the land, but how much was so covered is in dispute. On the 31st day of December, 1919, appellants brought an action in equity against appellee Choate, in which they averred that the land which they rented from Choate was covered with back water from the Mississippi river and tributaries after May 1, 1919, and remained overflowed until the — day of June, and that the

McNeills were unable to use the land, and tendered and offered the same back to appellee Choate, and that a new rent contract was entered into, whereby they were to have the lands at $6.25 per acre for that year. The petition in equity concluded with a prayer that the contract and note be cancelled, and for full and complete settlement and adjustment of the affairs between Choate and the McNeills. A few days later appellee Choate brought a common law action against the McNeills on the $1,250.00 note. Later the two actions were consolidated and heard together, the McNeills contending that the back water came up over the land after the first day of May, and that they tendered the land back to Choate, whereupon Choate asked them to retain the land at the price of $6.25 an acre, which was agreed to by the McNeills, and in consequence they were indebted to appellant Choate in the sum of $625.00 instead of $1,250.00, as contended by Choate.

The jury returned a verdict in favor of Choate for $1,250.00, on which judgment was entered, and from which judgment this appeal is prosecuted by the McNeills.

As there is but a question of fact it will be necessary to examine the evidence to determine whether the verdict is supported by sufficient evidence and is not flagrantly against the evidence, as contended by appellants. The execution of the contract and note is acknowledged, but the McNeills testified in substance that some time in May, while the water was over twenty-five or thirty acres of the land in question, they encountered appellee Choate on the streets of Hickman one afternoon and told Choate that the water was on the land, and that they could not cultivate it as set forth in the contract, and then and there tendered the land back to Choate, who then offered the land to appellants for $6.25 per acre, which offer appellants accepted, and that they cultivated the farm under this verbal contract. Appellants are sustained in this particular by the evidence of Coonskin Johnson, who testified that he was present and heard part, if not all, of the conversation.

All this conversation, related by appellants as had with Choate, is denied by the latter. He says he did not even see appellants on the streets of Hickman at the time and place stated by them, and had no conversation whatever with them concerning the letting of the land to them at $6.25 per acre, or at any price except as set forth in

the written contract. He further testified that during the summer he was at the farm twice, and on one or more occasions had conversations with appellants concerning the crop, but that no contention was made by appellants that the land was overflowed; that in fact it was not overflowed by back water at any time after the 1st day of May, but that about one or two acres of the low part was covered by rain water, but that this did not interfere with the crop, for the water later dried up and the ground was cultivated. It is also shown in evidence for Choate that the crop was planted about the first of May and that it matured in due time, and a part of the corn was sold and hauled away as early as September 27th. This evidence was admitted for the purpose of showing to the jury that the crop was put in early in the season, or at least early enough in the season to mature by September 27th. Appellee Choate called one or two other witnesses who gave evidence in corroboration of his testimony. It thus appears that the witnesses were about equal in number, and it would be hard to say for which side the evidence preponderated. A knowledge of the character and standing of the witnesses in the community where they live would bear only upon the credibility of the testimony, but was very helpful to the jury no doubt. It was purely a question of fact properly triable by a jury, and we would not be warranted in interfering with the verdict in such case, unless the verdict be clearly and palpably against the weight of the evidence. L. & I. R. Co. v. Roemmele, 157 Ky. 84; Interstate Coal Co. v. Shelton, 160 Ky. 40. To be so, the verdict must appear at first blush, after the reading of the evidence, to be grossly and irreconcilably contrary to the weight thereof. Bell v. Kaech, 80 Ky. 42. That is not true in this case, for the evidence seems about equally divided. It, therefore, became the province of the jury to find the facts from the evidence as presented. As there were no objections to the instructions of the court, and as the case appears to have been properly submitted to the jury, the judgment must be and is affirmed.

Judgment affirmed.