## METZEL vs. THE STATE.

The senate and assembly passed a joint resolution, directing the superintendent of public property to procure 5,000 copies of the governor's message to be printed in the German language, in pamphlet form for the use of the legislature at a

cost not exceeding eight cents per copy, and he wrote to the publisher of a Ger-
man paper informing him of the terms of the resolution, and requesting him
to print and forward such copies, and to advise him if he would undertake the
work and how soon the copies would be ready for delivery; to which the pub-
lisher replied by letter that he accepted the proposition and the terms named in
the resolution, and the 5,000 copies having been printed and delivered.  *Held.*
In an action against the state for the price of the work, that the correspondence
between the superintendent and the publisher, amounted to a contract that the
printing should be done at eight cents per copy, and not for a price to be there-
after determined.

The state submitting to actions before this court, stands on the same footing as a
private person, and contracts made with it are to be construed in the same man-
ner as those made between private parties.

ACTION against the state to recover the amount of a claim
for which the legislature had refused to make any appropria-
tion.  The facts are sufficiently stated in the opinion of the
court.

*Jomes H. Paine & Son*, for petitioner.
*The Attorney General*, for the state.

*By the Court*, DIXON, C. J.   On the 17th of January, 1862,
the assembly, the senate concurring on the 28th, passed joint
resolution number five, assembly, (1 Assembly Journal 88,) in
in these words:  " *Resolved by the Assembly, the Senate concur-
curring*, That 5,000 copies of the governor's message be print-
ed in the English language in pamphlet form with covers ; also
that the superintendent of public property be instructed to
procure 5,000 copies in the German language, 2,000 copies in
the Norwegian language, and 1,000 copies in the Welch lan-
guage, in the same form, for the use of the legislature ; *provid-
ed, however*, that the cost of said copies in the German lan-
guage shall not exceed eight cents per copy; that the said
copies in the Norwegian language shall not exceed ten cents per
copy ; and that the cost of said copies in the Holland and
Welch languages shall not exceed fifteen cents per copy, in-
cluding in each of the above cases, folding and stitching."

On the 4th of February after, Rufus Parks, the superintend-
ent of public property, addressed a letter to William H. Cole-

man, the publisher of a German newspaper in the city of Milwaukee, of which the following is a copy: " Office of the Superintendent of Public Property, Madison, Feb'y 4th, 1862. W. W. Coleman, Esq., publisher of the Herald, Sir: I am directed by the legislature to procure 5,000 copies of the governor's message in the German language, at a price not exceeding eight cents per copy, and desire you to print and forward them as soon as possible. If you undertake the work advise me of the fact, and how soon the copies will be ready for delivery. Yours, &c., Rufus Parks, sup't of pub. property." Coleman acknowledged the receipt of the letter on the 6th, and informed the superintendent that he accepted the proposition and the terms named in the resolution. The printing, folding and stitching were completed on the 26th, and the copies forwarded to the superintendent. On the 28th, Coleman wrote inclosing a statement of his charges at eight cents per copy, and on the 1st of March, the superintendent answered, saying, " Your favor of the 28th Feb'y is rec'd. The messages in the German language are rec'd, and enclosed you will find the bill and the duplicate, with my certificate attached, and also the necessary oath, which you will please to take before a justice of the peace, or some other person authorized to administer oaths, and enclose both bills, either to me directly, or to the secretary of state, who will, as the law provides, send them up to the committee on claims."

The bill was for 5,000 copies, at 8 cents, $400 ; and the certificate " that the above named five thousand copies of the gov. ernor's message were ordered and had by me, for the use of the state, under joint resolution No. 5, adopted by the assembly January 17th, and concurred in by the senate January 28th, 1862."

The demand was subsequently assigned to the plaintiff, who, the legislature having refused to make the requisite appropriation, brings this action against the state.

The only question presented, the facts being informally

agreed by counsel at the bar, is as to the effect of the correspondence between the superintendent and Coleman, whether it amounted to a contract, that the printing should be done at eight cents per copy, or whether the price was left open and undetermined. The attorney general insists that the letter of February 4th cannot be deemed a formal proposition on the part of the superintendent to pay the maximum price fixed by the resolution; that Coleman had no right so to construe it; but that it was in the nature of a preliminary inquiry, and further negotiations were necessary to settle the terms of the agreement. Subsequent events show, that there was no misapprehension between Coleman and the superintendent. Both understood it as an unqualified offer of the eight cents, the only price named in the letter, and we are of opinion that the construction put on it by them was correct. If it were a transaction between private parties, we cannot see how it could be the subject of doubt, and the state submitting to actions before the courts stands on the same footing. The authority of the superintendent to offer the highest price is undoubted, and that he intended to do so appears from the whole tenor of the letter. He named the price, the most he could give, and desired Coleman to print and forward the messages as soon as possible, who, if he undertook the work, was to advise him of the fact, and when the copies would be ready for delivery. Then, there was to be no further correspondence about the price, that was fixed. Coleman was to say whether he would do the work, and when it would be completed, and there the negotiation ended.

Let judgment be entered for the plaintiff, according to the prayer of his complaint.