## Denker Transfer Company v. Pugh.

(Decided February 17, 1915.)

Appeal from McCracken Circuit Court.

1.   Negligence—Actionable Negligence—Proximate Cause.—In an action by appellee to recover damages for injuries sustained by her

through the negligence of the appellant's agent in putting, or by mistake permitting, her to enter an automobile not owned or controlled by appellant, from which she was thrown by the negligence of the chauffeur; as her evidence conduced to prove that her injuries were received as stated, in either event the jury, if they believed appellee's witnesses, were authorized to find that the negligence of appellant's agent was the proximate cause of her injuries. For the latter's negligence, after selling her a ticket entitling her to ride in an automobile to her home, in putting appellee in the wrong machine, or not informing her of taking the wrong machine, if he knew it, concurring with that of the chauffeur in letting the machine escape, produced the injuries, responsibility for both being upon appellant. It is a well settled rule that the master is liable for injuries of which his servant's negligence is the proximate cause, though the negligence of a third party contributed to cause the injuries.

2. Personal Injuries—Proximate Cause—When Question for Jury.— It is also a well settled rule of law that what is the proximate cause of the injury is ordinarily a question for the jury; and before the court can take it away from the jury and determine it, the facts must be such that fair-minded men ought not to differ about them.

3. Appeal—Verdict—When Must Stand—Flagrantly Against the Evidence—Meaning of.—It is not the province of the Appellate Court to declare what witness or number of ' witnesses should have been believed by the jury, or in whose favor the evidence as a whole preponderates; nor would the fact that a jury accept the testimony of two witnesses, or even one, as against that of a greater number of opposing witnesses, justify the appellate court in setting aside the verdict on the ground of its being flagrantly against the evidence. To say of the verdict that it is flagrantly against the evidence means that it is palpably against the evidence. The fact that the evidence is conflicting or that the Appellate Court would have made a different finding on the facts, or that in its opinion the verdict is against the weight of the evidence, furnishes no cause for setting it aside; nothing' short of its being clearly and palpably against the evidence will give the Appellate Court authority to disturb it on this ground.

BERRY & GRASSHAM and ROSCOE REED for appellant.

J. D. MOCQUOT for appellee.

Opinion of the Court by Judge Settle—Affirming.

This is an appeal from a judgment of the McCracken Circuit Court entered upon a verdict awarding the appellee, Alice Pugh, $500.00 damages for personal injuries sustained, as alleged, through the negligence of the appellant, Denker Transfer Company, and its servants.

Appellant does not complain that there was error in any ruling of the trial court, nor does it make any objection to the instructions that were given. The sole ground urged for the reversal of the judgment is that the verdict of the jury is flagrantly against the evidence.

The facts, in brief, were as follows: The appellant is a corporation doing business in Paducah as a transfer company, and operates automobiles and hacks for the purpose of transporting passengers and baggage to and from the trains that enter that city. The trains are entered by appellant's agents before their arrival at Paducah, for the purpose of selling tickets to passengers thereon who may desire transportation following the arrival of such trains at Paducah to the hotels or their homes. These tickets when presented at the depot to the servants of appellant who may be found there in charge of their automobiles or hacks entitle the holders thereof to ride in same to their respective destinations in the city. On the 22d day of December, 1913, the appellee, Alice Pugh, together with her husband and child and a young man by the name of James Robertson reached Paducah after twelve o'clock at night on a passenger train from some point south. On this train, before appellee and her party got to Paducah, one John Baker, appellant's agent, sold each member of the party a ticket which entitled them to ride to their respective homes in one of appellant's automobiles, expected to be at the depot in Paducah awaiting the arrival of the train.

The evidence introduced in behalf of appellee conduced to prove that when she and the other members of her party alighted from the train at Paducah appellant's agent, Baker, who had sold them their tickets, conducted them to an automobile which he represented to belong to appellant and which he directed them to enter; that in obedience to these directions from Baker, she, her child and husband and Robertson entered the machine, immediately following which it was cranked up by a third party, who seemed to be in charge of it as chauffeur, but that after so cranking it the latter, for some purpose unknown to the occupants, temporarily left the machine, which, by reason of its engine having been put in motion, by the cranking, ran off, crossing several railroad tracks and finally ran into a ditch, throwing the occupants out. In the fall thus received appellee sustained the injuries complained of.

It is admitted by appellant that its agent Baker sold appellee and the members of her party tickets entitling them to transportation upon its automobiles, but it is appellant's contention, and its evidence conduced to prove, that after the arrival of the train at Paducah Baker approached appellee and her party, pointed out to them an automobile belonging to appellant, in which it was intended that they should ride to their homes, and directed them to enter it for that purpose; that at this time there were several other automobiles standing near that of appellant, among them one belonging to a rival transfer company known as the "147 Taxicab line," but that appellee and her party, instead of getting into the automobile of appellant pointed out to them by Baker, got into one belonging to the rival transfer company mentioned, which car was being operated by one Ray Strickmatter, an employe of the latter company, and that this car ran off and injured appellee.

Appellee testified, in substance, as follows: That upon the arrival of the train at Paducah she and her party were approached by the same man from whom they had purchased appellant's tickets while on the train and that he pointed to the automobile which they entered, saying: " 'Right here is your cab,' put us into it, shut the door and hooked up the curtains himself;" that she identified Baker as the person by whom they were thus directed because of having purchased the tickets of him on the train and because of the name on his cap. James Robertson testified to the effect that the man who sold them the tickets on the train had the words "Denker Transfer Co." on his cap, and that this man put appellee and the other members of the party into the cab by which she was injured.

Appellant's agent, John Baker, in giving his testimony, denied that he directed appellee and her party to or put them in the cab in question, but said that upon his leaving the train at Paducah he went to an automobile owned by appellant, which was in charge of Charles Denker, and directed him to reserve it for two men and a lady, meaning appellee and her party; that he then directed appellee, her husband and Robertson to take the machine in charge of Charles Denker and pointed it out to them, but they passed it and took the car in charge of Strickmatter; that they were assisted into the car by Strickmatter and he (Baker) had nothing to do with

their entering the car, nor did he close the door or hook up the curtains. He further testified that after appellee and her party got into the machine Strickmatter cranked it up and then stepped off from it for some purpose, and while he was in that position the car ran off and caused the accident complained of. Although, according to the testimony of Baker, he saw appellee and her party pass appellant's machine, to which he had directed them, and enter that of Strickmatter, he did not go to them, inform them of their mistake or direct them to leave that car and get into that of appellant. Charles Denker in part corrobarated Baker, as he testified that upon getting off the train Baker directed him to reserve his car for the use of appellee and her party, but that they passed his car and got into that of Strickmatter.

Strickmatter was also introduced as a witness by appellant, and he testified, in substance, that he was in the employ of the "147 Taxicab Line" at the time appellee was injured and was at the depot with his automobile when the train arrived; that appellee, her husband and child and Robertson came to his car and he placed them in it, put the curtains up and stepped around and cranked the machine, after which he stepped out to look back to see if there was anybody else that could be taken in his car, and that while he was looking for other passengers the car started and ran off over the street car tracks toward the Nashville, Chattanooga & St. Louis tracks, and after going a considerable distance ran into a ditch and thereafter circled back towards the depot; that he ran after it as fast as he could and when it turned back jumped on the running board and stopped it, but before he stopped the car appellee and the other members of her party had been thrown out of it. The witness further testified that he saw appellant's agent Baker at the depot every night, but was unable to recall what he said or did on the night in question, and did not undertake to say that Baker had not pointed out his car to appellee and her party and directed them to enter it. He admitted, however, that he took up, in payment for the transportation he intended to give appellee and her party to their homes, the tickets which they had purchased of Baker, but that when he afterwards presented the tickets to appellant for payment, its manager, Denker, refused to cash them.

It will thus be seen that the evidence was conflicting. According to the testimony of appellee and of Robertson, it was the fault of appellant's agent, Baker, that they entered the wrong automobile. According to the testimony of Baker and Denker, it was appellee's fault that she took the wrong automobile and sustained the injuries complained of. Manifestly the conflicting character of the evidence required the submission of the case to the jury and they were properly allowed to determine whether the facts were as stated by appellee and Robertson or as stated by Baker, Denker and Strickmatter.

It cannot be said that there was no evidence conducing to prove the negligence of appellant's agent, Baker, for if the jury were willing to accept appellee's and Robertson's version of what occurred at the time of receiving her injuries as the truth of the matter, instead of that given by the three witnesses of appellant named, it abundantly authorized the verdict. If, intentionally, or owing to the lateness of the hour and Baker's hurry to start appellee and her party for their homes, he by mistake put them in Strickmatter's automobile, believing it to be the property of appellant, he was guilty of negligence. On the other hand, if, as admitted by him, he saw appellee and her party pass appellant's automobile, to which he had directed them, and enter that of Strickmatter, his failure to go to them, warn them of their mistake and direct them to get out of that machine and enter the one in charge of Charles Denker, also constituted negligence on his part. In either event the negligence of Baker would be the proximate cause of the injuries received by appellee, for his negligence, in directing or putting appellee into the wrong machine, or not informing her of the mistake of taking the wrong machine, if he knew it, concurring with that of Strickmatter in allowing the automobile to escape and run away, produced the injuries, responsibility for the negligence of both being upon appellant. No principle is better settled than that the master is liable for injuries of which his servants' negligence is the proximate cause, though the negligence of a third party contributed to the injury.

Snyder v. Arnold, 122 Ky., 557; Lou. Home Tel. Co. v. Gasper, 123 Ky., 128; Watson v. K. & I. Bridge & Ry. Co., 137 Ky., 619. The cases *supra* also declare it to be the well recognized rule that what is the proximate cause of the injury is ordinarily a question for the jury; and

before the court can take it away from the jury and determine it, the facts must be such that fair-minded men ought not to differ about them. Here the facts were all disputed and the contrariety of evidence marked.

In L. & N. R. Co. v. Eckman, 137 Ky., 331, which was an action to recover damages for injuries sustained by the appellee at a railroad crossing, there was a contrariety of evidence as to whether such injuries resulted from the appellant railroad company's negligence or his own, appellant's witnesses greatly outnumbering those of the appellee, but in the opinion we said:

"It is manifest that the court should not have given the peremptory instruction asked by appellant, for the testimony of appellee and Bruehl compelled the submission of the case to the jury; and, if accepted by the jury as the truth of the matter, as was obviously the case, it furnished such evidence of negligence as would support the verdict. It is not the province of this court to declare what witness or number of witnesses should have been believed by the jury, or in whose favor the evidence as a whole preponderates, nor would the fact that a jury accepts the testimony of two witnesses, or even one, as against that of a greater number of opposing witnesses, justify this court in setting aside the verdict on the ground of its being flagrantly against the evidence. Our duty goes no further than to determine whether there was evidence to support the verdict, and our decision of that question is not to be controlled by our opinion as to whether the verdict is in accordance with or against the weight of the evidence."

In L. & I. Ry. Co. v. Roemmele, 157 Ky., 84, in holding that the railway company was not entitled to a new trial upon the ground that the verdict was flagrantly against the evidence, we said:

"To say of the verdict that it is flagrantly against the evidence means that it is palpably against the evidence. The fact that the evidence is conflicting or that this court would have made a different finding on the facts, or that in its opinion the verdict is against the weight of the evidence, furnishes no cause for setting it aside; nothing short of its being clearly and palpably against the evidence will give the appellate court authority to disturb it on this ground." Interstate Coal Co. v. Shelton's Adm'r., 160 Ky., 40; Empire Coal & Mining Co. v. McIntosh, 82 Ky., 334; McCoy v. Martin, 4 Dana, 580;

Chiles v. Jones, 3 B. Mon., 51; Page v. Carter, 8 B. Mon., 192.

Applying to this case the test furnished by the foregoing rule, no one familiar with the weight and effect of evidence can reach the conclusion that the verdict is clearly and palpably against the evidence. This being true, no reason is perceived for disturbing the verdict. The judgment is affirmed.