## Commonwealth v. Madison.

(Decided April 23, 1937.)

(As Modified May 11, 1937.)

572

B. M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General (CLIFFORD E. SMITH, of counsel), for the appellant.

CHARLES N. HOBSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The Kentucky State Industrial College for Colored Persons is a state educational institution created by statute for the purpose of giving normal school instruction and training to colored students. The grounds and buildings of the college are located just outside of the eastern corporate limits of the city of Frankfort, Ky. The buildings consist of halls, instruction and recitation rooms, gymnasiums, dormitories, and some residential buildings for the president of the college and for some of the instructors. At the date of the fire herein complained of (December 13, 1926), the law with reference to the college, its management, etc., was contained in article XVIb of chapter 113 of the 1930 Edition of Carroll's Kentucky Statutes, being sections 4527 to and including 4535 in that edition. Section 4527 placed the control of the college in a board of trustees, who were

made a body politic with the right to contract and be contracted with, and to sue and be sued in its corporate name.

In 1906 following the creation and organization of the college, there was erected on the grounds a girls' dormitory made of outside brick walls while the inside walls were made of substantial pine lumber separating the halls and rooms, with the same material used for stairways on the inside; the building being three stories high above the ground with a basement. It had an elevator running the entire height of the building, which is referred to in the record as a "freight" elevator. There were also three stairways running from the basement to the top story and located on each floor of the building at places easily accessible to those having occasion to use them. There was also one fire escape provided for the building and which was accessible from each of its floors. At about 5:30 a. m. on the day indicated (December 13, 1926), a fire was discovered in the bottom of the elevator shaft which spread more or less rapidly, and within an hour, or perhaps less time, the fire had spread to various parts of the building; but the evidence heard at the trial did not clearly describe the spreading of the fire, nor point out whether it soon reached the stairways so as to deprive the occupants of their use in making their exit from the building.

Several of the female occupants lost their lives in the fire, and a small number of others were injured in jumping from the upper floors to the ground. Among those whose lives were alleged to have been lost was Gladys Madison, whose father is J. L. Madison, the appellee and plaintiff below. Nothing was done toward recovering damages for the loss of her life until the 12th day of June, 1936, when plaintiff as administrator of his daughter's estate filed this action against the commonwealth to recover damages sustained by the estate of his decedent because of alleged negligence of the commonwealth producing her death. The action was filed pursuant to permission given by the General Assembly at its 1936 session through the passage of a resolution whereby plaintiff, as administrator of his daughter's estate, and other administrators of other pupils whose lives were alleged to have been destroyed by the fire, were "hereby empowerd and authorized to file suit and to prosecute appropriate actions against the Commonwealth of Kentucky for the purpose of de-

termining the liability of the Commonwealth for such death, if any liability there should be established." It was further provided that any action that might be filed under the license thereby given might be brought in the Franklin circuit court.

The only negligence as a basis of the action set out in the petition was and is stated in these words: "On or about December 13th, 1926, said girls dormitory caught fire in the night time, and was burned and destroyed; at which time, said Gladys Madison was entrapped in said building, and lost her life in said burning building. The death of said Gladys Madison was caused by the gross negligence and carelessness of defendant in the construction of said dormitory building, and in the manner in which said building was maintained and operated by defendant." Defendant's demurrer filed to the petition was overruled with exceptions, followed by its answer denying all of the material averments of the petition, and containing a plea of contributory negligence which was denied by a reply, thus forming the issues. At the trial the jury under the instructions submitted to it by the court—after defendant's motion for a peremptory instruction in its favor was overruled—returned a verdict in favor of plaintiff in the sum of $5,000, upon which the court rendered judgment after overruling defendant's motion for a new trial. Seeking a reversal of that judgment, defendant prosecutes this appeal.

There are presented by the record, as made up in the trial court, these questions: (1) Whether the inserted averments of the petition, containing the only charges of negligence relied on, were sufficient in law to sustain the action as based upon the carelessness of defendant in failing to provide proper safeguards against fire; (2) whether or not decedent lost her life in the fire; (3) whether or not the action became barred after one year following the fire, since the board of trustees were incorporated with the power to sue and be sued; (4) whether the resolution passed by the Legislature giving the right for plaintiff to file the action against the commonwealth waived any question of limitation that might have otherwise been available and thereby started the statute afresh; (5) whether or not, under the proof the decedent, if in the building at the time of the fire, was guilty of contributory negligence because of her participation in some of the acts urged

as negligence, and in continuing to occupy the building with knowledge of the kind and character of material in the building and exits therefrom, all of which was gained by her occupancy thereof for a period of two years prior to the fire; and (6) whether or not the proof established any actionable negligence against the commonwealth.

The basis for question (1) is that under the rule that pleading should be construed most strongly against the pleader, the negligence alleged appears to be directed toward the physical defects in the construction of the building, whereby it or some parts of it might collapse and injure persons who might be in a position to be affected thereby. But recovery is not sought for injuries so produced, and the question will be determined along with the disposition of question (6) stated below. Question (2) arises from the fact that there was no proof introduced at the trial showing that decedent was in the building on the occasion of the fire, nor that she had retired to her room the evening before, nor did any witness testify that she had been seen in the building for quite a while prior to the fire. Neither was there any evidence found in the debris of the burnt building whereby it might be inferred that decedent was a victim of the fire; but because of other errors later determined, we will pass that question without further reference thereto. It is highly probable that question (3) should receive none other than a negative answer, since it is doubtful whether or not the empowering of the board of trustees to sue and be sued—as given in the statute creating the college—embraces actions for tort, as is pointed out by the text in 56 C. J. p. 528, sec. 621, wherein it is said, inter alia: "It is the generally accepted rule, although there is some authority to the contrary, that such a [school] district, or its directing board, as such, like other municipalities and the state itself, is not liable to persons injured by its nonfeasance, nor is it liable for injuries or loss resulting from its negligence, as for a failure properly to construct a school building or to keep it in repair, or to maintain the school premises or equipment in a proper and safe condition," etc. In the next section (622, on page 530) it is pointed out that "a school district or other local school organization is not liable, except where made so by statute, for the negligence of its officers in the exercise of their power or the performance of their

duties.'' But for the same reasons hereinbefore stated we deem it unnecessary to determine the question—the only effect of which if we should do so, would relate to the question of limitations within which the action should be brought, conceding the liability of the district for the character of alleged wrong for which redress is sought. For the same reasons advanced above, it is also deemed unnecessary to determine or adjudicate question (4), and it, like the others mentioned, will be passed without disposition. We likewise pass without determination—and for the same reason—question (5), although there is evidence showing decedent's participation in contributing to the deposit of waste combustible material in the elevator shaft by emptying each morning contents of waste baskets down the elevator to be later removed by the janitor or other employee whose duty it was to do so. Counsel for plaintiff strongly urges that such indulgence was an act of negligence, although there was no direct testimony to show that there was any such material so deposited *at the time* of the starting of the fire at the early hour on the morning of December 13, 1926. Such deposits of waste were usually made each morning when the occupants of the various rooms of the dormitory would clean them up. The practice was in violation of the rules of the institution, but decedent, we repeat, appears to have participated in the violation thereof as much so as any of her fellow occupants of the building.

We are thus brought to a determination of question (6), which we conclude, with question (1), are decisive of the case, i. e., whether or not the petition alleged, or the proof heard established or tended to establish any actionable negligence on the part of the commonwealth whereby liability against it was created for any destruction produced by the spreading of the fire on the occasion thereof? The only testimony heard at the trial looking to the establishment of negligence on the part of the defendant was that given by the witness L. L. Oberwarth, an architect residing in Frankfort. The substance of his testimony—a large part of which was heard over the objections of defendant—was that in order to provide protection against loss or damage by fire the building should have had more fire escapes than the one it did have; that there should have been constructed noncombustible fire walls throughout the building separating the various floors into fireproof

or quasi-fireproof sections, whereby the rapid spread of a fire that might occur would at least be checked for a sufficient period to enable the occupants of any protected section where the fire was not raging to effect their escape. Also, that the elevator shaft should have been constructed of, or lined with, some noncombustible material, and that the well holes of each stairway should have likewise been so constructed, and that the steps of the stairways should have been of the same material. The correctness of that testimony—as establishing a more careful construction of the building against loss or destruction by fire—cannot be disputed; but the increased safety against damage produced by a fire, which such observances would create, is not, according to our conception of the case, a relevant matter, unless there was some legal duty on the part of the commonwealth in the construction and maintenance of the dormitory to observe such precautions against fire.

The only statutory provisions requiring such precautionary measures, including fire escape equipment, are contained in sections 1830 and 2059a-7 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes. The one (section 1830) prescribes for such precautionary methods with reference to buildings "of three or more stories in height" (with certain enumerated exceptions) when the buildings are constructed in cities of ten thousand inhabitants or more; while the other (section 2059a-7) prescribes for such fire escapes facilities for hotels and restaurants when occupied as such and where the buildings are more than two stories high. There are no other statutory provisions on the subject that we have been able to find within the limitations of our statutory law, and none other is pointed out to us by researchful counsel on either side.

"Negligence" is the failure to perform a duty which the one guilty of it owes to the one complaining of it. We have seen that there is no statute attempting to create or impose any of the duties, to the violations of which plaintiff directed his testimony through the witness Oberwarth. As previously stated herein, the destroyed dormitory in this case would have been made safer from the ravages of fire if the recommendations and suggestions of the witness had been observed in its construction; but unless there was some imposed duty on the part of the commonwealth to have adopted and executed its building plans in accordance therewith, then

there can be no negligence on its part in failing to do so. There then being no statutory imposed duty, the next question is: Does the common law impose such a duty, since the statutory provisions referred to do not embrace the character of building as was the destroyed one in this case, the dormitory being outside of the corporate limits of the city of Frankfort, a city of more than ten thousand inhabitants, and it not being a hotel or restaurant as contemplated by the provisions of section 2059a-7 supra?

At the outset it may be observed that the powers and duties of school districts, through and by its duly constituted officers, in the construction and maintenance of school buildings, are those only that are created by statute, either by express language or by necessary implication. See 56 C. J. 463, secs. 464, 465, and 466. There is no pretense or effort made to charge any act or omission of the trustees of the college institution involved as violative of any statutory duty in the construction or maintenance of the destroyed dormitory, since there was no enactment, either expressly or impliedly, requiring the adoption of safety precaution against fire as herein contended for; and it is nowhere intimated that the dormitory was not a substantially constructed building but without the safety appliances against fire as outlined by the witness Oberwarth. Neither is there any complaint against the distributed locations of the three stairways so as to make them readily accessible to the occupants of the building. Counsel for plaintiff in his brief filed in this court likens the relationship of the commonwealth in this case toward the occupants of the destroyed dormitory, to that existing between landlord and tenant. In substantiation thereof we take this from his brief: "However, there was no duty on the state to BUILD FIREPROOF [buildings]. We have never insisted, do not now insist that it was the duty of the commonwealth to erect a fireproof dormitory; but when the state comes into court, by its own consent as an ordinary landlord, it is under a legal duty to build a reasonably safe dormitory, for the purposes for which it was intended. Not for the purpose of making the buildings incombustible—but just to make it habitable, and fairly slow to burn."

We, however, have been unable to find any text authority or any opinion of any court imposing a common-law duty on the part of a landlord to provide such

precautionary measures against fire. He is only liable at common law for certain defective premises whereby his tenants in certain circumstances are injured because of defective construction or maintenance and where the sustained injuries were the product of such failures directly flowing from such omissions or commissions on the part of the landlord, and not resulting consequentially through the intervention of another agency such as the destruction of the building by fire. In section 567, p. 1047, 16 R. C. L., it is stated that a landlord is liable to his tenant for failing to provide fire escapes or take other precautionary measures against fire *only when there is a statute requiring it*. The text in 24 Cyc. 1118, in dealing with the question, by inescapable inference, declares the same nonliability rule at common law when it says: "In some jurisdicitons the landlord is by statute required to provide suitable fire escapes to certain designated classes of buildings and is liable for injuries resulting from his failure to provide such fire escapes, or to have them in proper condition for use by the occupants of the building."

In note 64 to that text there is cited the case of Schmalzried v. White, 97 Tenn. 36, 36 S. W. 393, 394, 32 L .R. A. 782, in which the Supreme Court of the State of Tennessee expressly held: "At common law a landlord is not obliged to fiurnish fire escapes." In the course of the opinion in that case the court said: "Independent of statute or ordinance, we do not think that the duty is imposed upon the owner of leased property to provide such appliances for the safety of the tenant, or for any one on the premises by the latter's invitation or permission. It is held that there is no common-law obligation resting on the master to provide means of escape from fire for his employees. Jones v. Granite Mills, 126 Mass. 84 [30 Am. Rep. 661]; Keith v. Granite Mills [126 Mass. 90, 30 Am. Rep. 666]; Pauley v. Steam Gauge & Lantern Co., 131 N. Y. 90, 29 N. E. 999 [15 L. R. A. 194]. And we do not think that it can be insisted that the common law would place a higher duty upon the landlord, in this regard."

The New York Court of Appeals in the case of Pauley v. Steam Gauge & Lantern Co., 131 N. Y. 90, 29 N. E. 999, 15 L. R. A. 194, announced and approved the same doctrine with reference to the relationship of master and servant and likened the situation to that of landlord and tenant—in which latter relation the opin-

ion declared an entire absence of duty on the part of the landlord under the common law to provide such safety appliances for the protection of the inhabitants of the building against consequences of fire. The same conclusion was reached by the Ohio Supreme Court in the case of Rose v. King, 49 Ohio St. 213, 30 N. E. 267, 15 L. R. A. 160. In the annotation to the case of Yall v. Snow, 201 Mo. 511, 100 S. W. 1, 119 Am. St. Rep. 781, 9 Ann. Cas. 1161 in 10 L. R. A. (N. S.) 177, it is said: "The duty to provide fire escapes for buildings properly constructed and not peculiarly exposed to danger of fire from the character of the work to be carried on therein did not exist at common law. (Citing cases.) But statutes imposing such duty have been passed in most, if not all, of the states, and their constitutionality is usually sustained."

The text in volume 13, American and English Encyclopedia of Law (2d Ed.), in treating the subject of "fire escapes" and other means of protection against danger from fires, says: "At common law the owner of a building not peculiarly exposed to the danger of fire from the character of the work to be carried on in it was not bound to anticipate the possibility of remote danger from fire or that its occurrence would put in jeopardy the lives of his employees or tenants, and the law did not require, where the building was properly constructed for its intended use and purpose, the construction of fire escapes, the ordinary means of escape by stairs, hall, doorways, and windows being deemed sufficient." It will be observed that some of the cases referred to had under consideration the relationship of landlord and tenant; while in others the relationship of master and servant was involved; but the absence of a common-law duty of the landlord in the one case, and the master in the other, to provide such protecting facilities against danger of fire, was expressly declared, and the last-cited text states the broad principle that the owner of any character of building, regardless of any relationship that he might sustain to one injured by fire destroying it, was likewise immune at common law from liability because of failure to provide such precautionary measures against fire.

Pursuing the question still further, we find that the text in 32 C. J. 541, sec. 26, in dealing exclusively with the rights and duties of innkeepers in respect to such matters at common law, says: "At common law there

was no obligation to provide fire escapes for the safety of the guests or lodgers, but statutes in many jurisdictions provide that hotels, boarding and lodging houses over a certain size shall be furnished with fire escapes, in order to protect the guests from the risk of injury or loss of life, in case the ordinary modes of exit are cut off by fire.'' Other equally emphatic declarations of the prevailing principle under consideration are found in Thompson's Commentaries on the Law of Negligence, sec. 1149; Blotcky v. Gahm, 108 Neb. 275, 187 N. W. 640; and especially the text in 4 R. C. L. 404, sec. 10. See, also, the case of Pennyroyal Co. v. Jordan, 229 Ky. 693, 17 S. W. (2d) 720, 721, 66 A. L. R. 1390, wherein we declared the same principle to be the correct one under the common law, and in doing so we employed this language: ''There is no common-law or statutory duty [in this state] resting upon the landlord to equip or maintain its building with auxiliary fire apparatus.'' The opinion also reiterated another correct principle in holding that negligence can be established only upon the failure to perform a duty and in the absence of duty there can be no negligence.

Compare also annotations in 31 A. L. R. 450, and annotation on page 988, 53 A. L. R. upon ''What constitutes an hotel or inn'' within the purview of statutes and ordinances requiring such precautionary installations; and also annotation on page 1351 of volume 96 A. L. R. on ''What is a 'manufacturing establishment' within meaning of regulatory statutes.'' There are a number of other cases and texts to the same effect, and which lead us to the unerring conclusion that at common law there existed no duty upon the part of the owner of a building to equip it with fire escapes, or to construct it in a manner to prevent the spread of fire. Consequently an occupant of a building, regardless of the purpose for which it was occupied, who might be injured as a result of a fire, could not recover from the owner of it because of his failure to equip it, and to construct and maintain it in the manner and for the purposes indicated and contended for, i. e. with precautionary facilities to prevent loss by fire. There being no such duty at common law, and neither of our statutes applying to the character of building as was the destroyed dormitory in this case, it follows that the court erred in overruling defendant's demurrer filed to the petition, and in the admission of the testimony re-

ferred to, and also erred in expressly instructing the jury that such duties rested upon the defendant and that its failure to perform them constituted negligence.

Defendant's counsel also argue with much force and plausibility what might be regarded as a seventh question—but not listed above—and which is, the failure of the proof to show that decedent's death, admitting that it was produced as a result of the fire, proximately resulted from defendant's alleged negligence, conceding it to be actionable in the circumstances. The question presented by that argument is, to say the least of it, a very much debatable one under the condition of the proof; but because of the conclusion reached in disposing of questions (1) and (6) we will not express a final determination upon it.

It is insisted by plaintiff's counsel that the resolution under which the action was brought, as interpreted in the case of Pennington's Adm'r v. Commonwealth, 242 Ky. 527, 46 S. W. (2d) 1079, 1080, operated to foreclose defendant's right to rely on any of the defenses referred to, and that practically the only issue that could be tried was the amount of damages sustained to the estate of the decedent for the alleged destruction of her life. But we are unable to reconcile that contention with the language contained in the Pennington opinion, since it was expressly held therein that the only effect of the resolution was that the commonwealth waived its immunity as a sovereign power from being sued in its courts for the alleged wrong as a basis for plaintiff's petition. After discussing the matters involved, our final conclusion was stated thus: "When the General Assembly gave its consent that the sovereign might be sued, it left it to the court and jury to determine what, if any recovery, should be had according to law applicable in such cases between private individuals. Commonwealth v. Lyon, 72 S. W. 323, 24 Ky. Law Rep. 1747; Commonwealth v. Stevens [3 Ky. Law Rep. 165]. When the commonwealth by the resolution consented without reservation that it might be sued, it thereby consented to be brought before its courts as any other defendant, and that appellant's claim against it was to be determined by the court according to those *settled rules of law* upon which the responsibility in like actions of *individual litigants* is determined. Green v. State, 73 Cal. 29, 11 P. 602, 14 P. 610; Metzel v. State, 16 Wis. 347; Jewell Nursery Co. v.

State, 8 S. D. 531, 67 N. W. 629; The Thekla, 266 U. S. 328, 45 S. Ct. 112, 69 L. Ed. 313. It was stated in oral argument that the trial court awarded a peremptory instruction on the ground which we have considered. Therefore we only consider and determine that ground and no other, and expressly reserve our opinion on all other questions." (Our emphasis.)

Under the condition of the record as so outlined, the court erred in not sustaining defendant's demurrer filed to the petition, and again erred in overruling its motion for a peremptory instruction in its favor, and the judgment is reversed, with directions to set it aside and for proceedings not inconsistent with this opinion. All questions not determined are reserved. The whole court sitting.