## State Highway Commission et al. v. Hall.
(Decided April 29, 1938.)

HUBERT MEREDITH, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellant.

HILL & HOBSON and ALLEN & TACKETT for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This suit against the commonwealth and the state highway commission for damages for personal injuries was authorized by a resolution of the General Assembly, chapter 461, Acts of 1936, permitting the appellee, G. B. Hall, to bring suit for recovery of such damages claimed to have been suffered by him and allegedly

caused by the gross negligence of the state highway commission, its agents and employees in the operation of its grader along the state's highway.

In this suit, brought pursuant to this given authority, a verdict was recovered by appellee in the sum of $2,500 with interest, upon which judgment was accordingly entered.

Appellant's motion and grounds for a new trial having been overruled, it has appealed, seeking a reversal of the judgment.

The facts and circumstances attending the accident in which the appellee sustained his injuries show that it resulted from a collision occurring between the car in which Hall was riding, as a guest, with certain road equipment belonging to the appellant, which its employees and servants, while engaged in working this section of the road where the accident occurred, had left standing and extending entirely across the highway, completely blocking the movement of traffic and travel thereover, and into which the driver of the car, in which the appellee was then a passenger, recklessly drove, when appellee was, by the resulting impact of the collision, violently thrown forward in the car and badly cut and injured.

Seeking recovery of damages for these injuries sustained in this accident, the appellee, G. B. Hall, brought this action against the state and the state highway commission, by his petition averring that plaintiff was upon this occasion a guest in the automobile owned and driven by his son-in-law, M. D. Ramsey, and that the collision by which he was injured was caused by the negligence of the agents and servants of appellant in completely obstructing the highway, at the time and place of the collision, with their road machinery, without giving notice or warning to approaching motorists of the obstruction of the highway, made by its road working equipment there standing across the highway in such a way as to completely block the passway thereover.

Appellant answered, traversing the allegations of the petition (except the passage of the resolution by the General Assembly, authorizing the bringing of the suit, as stated supra) and further pleaded the following affirmative defenses: (1) That the plaintiff was contribu-

torily negligent, and (2) that M. D. Ramsey, the driver and owner of the car, and plaintiff were at the time of their collision accident engaged in a joint enterprise and that the collision was caused by and due solely to the negligence of Ramsey, the driver.

These affirmative allegations of the answer were by agreement of the parties controverted of record, when upon a trial of the case before a jury a verdict was returned awarding damages in the sum of $2,500, to the appellee, Hall, upon which judgment was rendered, as stated supra.

It appears that the appellant, state highway commission, was at the time of the happening of this accident, out of which this suit arises, maintaining a highway in Floyd county, near Prestonsburg, upon a section of which it had two of its employees, using a tractor and grader, engaged in "ditching" or grading it. At the time and place where this accident occurred, these employees had graded down one side of this section for a distance of about a half mile from the place of beginning, where, they testified, they had, when commencing work, placed "men working" signs.

They further stated that having graded this highway section for a distance of about a half mile on one side, which was as far as they expected to then grade, they had started turning the tractor to pull the grader around and across the road, to ditch the other side of the section back to the beginning point, when the blade of the grader had caught on the edge of the concrete, bringing their turning to a stop while the tractor and grader were standing across the road.

It is shown the grader was coupled or fastened to the tractor by a large "coupling pin" about 8 feet in length and something over 4 inches in diameter. Further, it appears that while they were trying to extricate the grader blade from the concrete, the tractor was standing practically over on the right-hand side of the road, while the grader stood on its opposite side, with only the connecting coupling pin extending across the intervening open space of some 8 feet.

Also, the testimony is that this road machinery had not been thus standing and blocking the highway at the place of the accident for more than five to eight minutes before it was driven blindly into by Ramsey, the

driver and owner of the car in which the appellee, Hall, was then riding.

The testimony is further that these highway employees and operators of the tractor and grader, as soon as they discovered that this road working equipment was stalled and obstructing the passing of traffic, flagged the first cars approaching the blocked section from either direction, when they stopped and parked along the road, when the other approaching cars, notified of road trouble ahead by the presence of these cars, also drew to the side of the road and stopped, where they awaited the removal of the temporary obstruction or other trouble in the road temporarily closing their passway.

It is further shown that the appellee, Hall, upon this occasion was also approaching this obstructed point in the highway, riding in a Ford car with his son-in-law, M. D. Ramsey, its owner, then driving it, when it ran, pell-mell, into collision with this machinery standing across the highway, whereby the appellee was injured. This car was, it appears, then coming down this highway, towards Prestonsburg, in the same direction in which six or eight other preceding cars were being driven, which, seeing the road equipment's obstruction of the road, had thereupon stopped, waiting for the tractor and grader to be removed from their passway. However, it is shown that the course of action followed, under such circumstances, by Ramsey, the driver of the car in which appellee was then riding, was altogether different and less cautious, in that, instead of his also stopping behind these other six or eight cars he saw parked there along the highway in front of this blocked point, extending back in a line from it for a distance of some 85 feet, he nevertheless drove around all these parked automobiles, without slackening, but rather increasing, his speed, and recklessly and impetuously rushed on towards the closed point in the road, where were standing this tractor and grader which appellant's employees were attempting to there turn across the road. Ramsey testifies that he was going at a rate of some 25 or 30 miles an hour until he came within a few feet of the obstructing road machinery, when, suddenly recognizing the disaster threatening, he then desperately attempted to stop his car with all his brakes, but too late to avert its crashing into the coupling pin extending across the intervening space

between the grader and tractor, the resulting impact of the collision both damaging his car and badly injuring appellee, his aged father-in-law, G. B. Hall.

The account given by Mr. Ramsey, the driver of the car, as to how this collision occurred and was caused between his car and the road machinery, is as follows:

"Well, I was driving along down the trail and come along up above this place, Brandy Keg Creek they call it, and I was driving along there and I looked right on ahead down the road and saw these cars parked along there and I looked on down the road and saw a clear road down through there, on down the highway; I saw all these cars setting there and I blowed my horn and come right on and then I checked by speed up and as I passed around them, or was going to pass around them, * * * I just stepped on the gas, and I could see a clear road and there was cars on that side but the grader and tractor was on down there and I could see a clear space between them clear on down the highway and I gave it a little gas and saw this coupling pole across the road and I put my foot on the brakes and pulled my emergency brake on and did all in my power to stop the car and when I put on the brakes I saw I couldn't stop, and looked all around on either side of the road and there was a ditch on either side and I saw there was no chance to keep from hitting that coupling pole. * * * I used all of the power I could to stop, I shoved on the brakes with all the power I had in me, and pulled on the emergency brake and tried to shift the gears, thought that might stop it and I was doing everything I could to stop the car and thought we was all going to be killed, and thought by shifting and scraping the gears it might stop the car."

On cross-examination, Mr. Ramsey gave the following testimony:

"Q. Now, when you got down to the point where you saw all those cars by the side of the road, up to that time you say you hadn't seen a sign along the road, didn't see a 'men working' sign anywhere? A. No sir, not at that place, they might have been one above there, but at this place there wasn't anything like that at all.

"Q. Did you see anything above there? A. Yes sir, that was along up on Beaver Creek.

"Q. I am talking about the Mayo Trail, between Allen and Prestonsburg? A. No sir, didn't see any.

"Q. Did you see fresh dirt where the grader had dug up the fresh earth along the road by the ditch line, where it had been grading along the road as you came down? A. I didn't notice that.

"Q. When you got down to about where the wreck occurred, how far away from the wreck were you when you first observed the cars parked along the side of the road? * * * A. I could see the cars sitting there from away up the road.

"Q. How far can you see up and down that road, it is about straight, isn't it? A. You can see up and down that road a long ways, I don't know just how far you can.

"Q. How did you get around them (the cars on the left hand side of the road)? A. I was coming down the road, and those cars was just sitting there, *I didn't know but what something was wrong, or what was going on."* (Italics ours.)

Appellant by its answer pleaded that the appellee and his son-in-law, Ramsey, were, as stated above, when making this trip in Ramsey's car with the latter's family, engaged upon a joint enterprise in that they were both going to Prestonsburg for business purposes. However, the proof, it appears, fails to support this plea, yet in our determination of the question here presented, of appellee's right to recover, our finding upon that issue is unimportant, even if conceding, arguendo, that the appellee and the driver of the car were upon this occasion engaged upon a joint enterprise, when the negligence of the driver of the car could be imputed to the appellee when so riding with him, nor do we deem it, under the evidence presented as to the facts and circumstances under which this collision occurred, of controlling importance as to just where the "men working" signs were placed along the highway, as we here find ample notice and warning were, independently of the placing of these signs, otherwise given the driver of appellee's car of the blocked condition of the road.

At the conclusion of the introduction of plaintiff's

evidence, the defendant moved the court to peremptorily instruct the jury to find a verdict for it, which motion the court overruled; and again, at the conclusion of all the testimony, the defendant renewed its motion, which was again overruled.

Thereupon, instructions offered by both plaintiff and defendant were, over the objections made respectively by opposing counsel thereto, given by the court and under which the jury returned its verdict, finding damages for appellee in the sum stated of $2,500 and interest.

Numerous grounds of objection were and are here again urged against the propriety of the judgment entered upon this verdict.

In view of the conclusion we have reached that the appellant's contention, here urged and strongly argued, upon the one ground—that the court prejudicially erred in overruling its motion for a directed verdict—is meritorious and that the determination of this question is alone conclusive of the appeal, we regard it as unnecessary to discuss or decide other assingments of error made and here argued for the reversal of the judgment.

However, having very carefully read and considered the evidence, both given on behalf of the appellee and the appellant, portraying the circumstances and conditions under which the injuries were received by the appellee in this accident arising out of the collision, we are constrained to conclude that the same was caused and entirely due to the negligence of Ramsey, the driver of the car in which the appellee was at the time riding as a guest.

The evidence is undisputed that the appellant's road working crew were at the time and place in the road where the collision occurred rightfully and lawfully there when engaged, as employees of the highway commission, with its road machinery, in performing the duties of their employment, of working and keeping in repair the highway.

Upon this occasion we find that the two employees of the highway commission, having charge of the road machinery (a tractor and grader), were doing the road work for which they were employed—that is, ditching or grading a half mile section of the highway—when this collision with their road equipment, then in use on

the road, occurred; that "men working" sign or signs, they state, were put out by them nearby or above the point at which they began this work; and that, on reaching the end of the work section, some half mile distant, they were attempting to turn this tractor and grader, so as to pass from one side of the road over to the other for ditching on that side, when the blade of the grader became fastened in the edge of the concrete and their turning was temporarily halted, leaving the two pieces of machinery, connected by an 8-foot coupling pole, standing crosswise of the road.

Certainly this temporary and unavoidable halting and accidental stopping of their ditching work, when attempting in the regular course of their work to turn and cross the road to proceed with their ditching work back to the point of beginning, cannot be held or considered as in any wise being a negligent obstruction of the highway by them, where arising, as it is admitted, in the attempted regular and due course of their employment and work of ditching and properly maintaining the highway. They state further, however, that upon finding that their efforts to cross with the machinery from one side of the road to the other had caused the blocking and obstructing of the highway, they flagged the first approaching cars, which stopped along the road on either side of the stalled road machinery until it could be removed; that several other cars also approached while they were engaged in making the turn with their machinery or removing it from across the highway, all of which duly stopped upon seeing the parked cars, which indicated to them the presence of some trouble ahead or an obstruction in the highway, and remained so parked along the road, awaiting the removal of the obstruction.

But such exercise of care and caution, for their safety, as evidenced by these several drivers of the parked cars, was in no wise observed or employed by Mr. Ramsey when he approached this place on the highway where it was thus obstructed and where there was standing a long line of parked cars, the presence of which strongly warned and notified him that there was trouble ahead or that cause existed for stopping, whether by reason of men there being at work or a road obstruction or what not.

Mr. Ramsey, the driver of the car, states that notwithstanding such premonitory signals given him by

the presence of the cars there parked, and notwithstanding that the road over which he approached had presented a clear view of the situation ahead for a long way up the road and that he had, when far distant from this place, seen these cars parked in the road, he had nevertheless, heedless of cause or danger, rushed on by these parked cars, because he thought he saw a clear but narrow space ahead between the tractor and the grader standing crosswise of the road, as he did not at such distance see this coupling pin occupying and blocking this narrow and seemingly open space between them.

Also, he states that not only did he not slow his speed of travel, but that as he went by these parked cars (apparently defiant of their warning) he "stepped on the gas" and accelerated his speed until within a few feet of the obstructing road machinery, when he discovered that there was no open, intervening space between the tractor and grader, but that same was blocked by the large 4½-inch coupling pin, which extended across the space. He states that it was only then, when finding himself confronted with this near obstruction and being unable to stop his car in the emergency, he unsuccessfully applied his brakes and, further, that even then, at this stage of his seeming attack upon the road machinery, he did not discover what the tractor and grader were until he hit them.

While generally the rule is that the question as to whether or not any particular act or omission on the part of the driver of an automobile, under given circumstances, constitutes negligence is left for the exclusive determination of the jury, we are yet of the opinion that under the circumstances here presented, where, according to the evidence, full and ample notice and warning was given the driver and perceived by him, yet notwithstanding such fact he violated the rules of the road by rushing ahead, without the exercise of any care for the safety of himself and the occupants of his car or without maintaining any lookout for traffic conditions ahead, there can exist no doubt or any ground for difference of inference among reasonable and intelligent men as to the obvious fact of the driver's reckless and wanton negligence upon this occasion being the sole cause of the collision.

It must be remembered that the situation here presented was one where Ramsey was driving down a

straight highway, in broad, open daylight, with a clear view ahead, presenting a grouping along the side of the road of many standing cars, awaiting the remedying of some trouble or danger ahead.

The evidence here as to what was the proximate cause of the collision does not consist of conflicting testimony given by two sets of witnesses, making clear-cut issues upon the question of fact as to the negligence or contributory negligence of the parties respectively, as being the proximate cause of the accident, but all the evidence as to the fact and circumstances of its occurrence is without contradiction and to the one effect that the driver of the car upon this occasion, when in broad daylight and having a clear view ahead, drove into this coupling pin extending across the road, when, had he maintained any reasonable lookout or exercised any ordinary care to protect himself and the passengers of his car from injury, he could easily have seen the cars standing parked along the highway ahead, near the road machinery extending across and obstructing the passway over the road.

Such was the testimony given by the driver of the car himself, when testifying in support of plaintiff's claim for damages.

In the case of Fullenwider v. Brawner, 224 Ky. 274, 6 S. W. (2d) 264, 266, we said:

"The proximate cause of an injury is not a question of science or legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it, and, like any other question of fact, it is ordinarily, but not invariably, a question for the jury to determine. It is a question for the jury when there is a conflict in the evidence respecting it, or if conflicting conclusions may be derived therefrom. Beiser v. Cincinnati, N. O. & T. P. Railway Company, 152 Ky. 522, 523, 153 S. W. 742, 43 L. R. A. (N. S.) 1050; Ware v. Saufley, 194 Ky. 53, 237 S. W. 1060, 24 A. L. R. 500; Denker Transfer Company v. Pugh, 162 Ky. 818, 173 S. W. 139; Chesapeake & O. Railway Company v. Holbrook, 208 Ky. 588, 271 S. W. 583; Interstate Coal Company v. Love, 153 Ky. 323, 155 S. W. 746; George G. Fetter Company v. Coggeshall, 208 Ky. 721, 271 S. W. 1074, 1075.

"If the facts are not in dispute, or if the in-

ferences arising from the facts do not present room for contrary conclusions by reasonable men, then it is a question the court may determine. The court may find as a matter of law from the facts proven that the injury complained of did not result from the negligence proven. Smith's Adm'r v. Cincinnati, N. O. & T. P. Ry. Company, 146 Ky. 568, 142 S. W. 1047, 41 L. R. A. (N. S.) 193; Hummer's Ex'x v. Louisville & N. Railroad Company, 128 Ky. 486, 108 S. W. 885, 32 Ky. Law Rep. 1315; Goins v. North Jellico Coal Company, 140 Ky. 323, 131 S. W. 28; Illinois Central Railroad Company v. Dupree, 138 Ky. 459, 128 S. W. 334, 34 L. R. A. (N. S.) 645; Dunn v. Central State Hospital, 197 Ky. 807, 812, 248 S. W. 216.''

The plaintiff here contended that his injuries were sustained in the collision, which was caused by the negligence of appellant's road employees, in that they did not give due and proper notice and warning of the obstruction they had left temporarily standing across the highway. The counter contention of appellant is that the collision was solely caused by the negligence of the driver of the car in which the appellee was at the time a guest, in driving his car willfully and recklessly into the standing road machinery, temporarily extending across the road and notwithstanding the fact that he, when so doing, had ample and full notice and warning that trouble was ahead or that the road was blocked, due to the many cars he saw, as he approached this point of the highway, there standing parked, which constituted premonitory notice that it was dangerous and in violation of the law of the road for him to attempt to rush on ahead by them.

The driver of the car states that he approached this closed or blocked section of the highway over a practically straight course, leading to it, when he could and did see, from a long distance back, the warning conditions there existing, which should have effectively served to warn him that the then users of the highway had been halted and caused to stop, due to some trouble near ahead.

There is no conflict in this testimony, unless it be as to how near the beginning of this section of the road then being worked the ''men working'' signs had been placed. This variance, however, we deem here immaterial, by reason of the fact of its being clearly shown

by the undisputed evidence that, independently of where these "men working" signs were placed, ample and sufficient notice of the blocked condition of the highway ahead was given the driver of the car by the number of cars he saw lined up beside the road, warning him, by their presence there, that the road immediately ahead was for some cause then impassable.

Under such circumstances, it cannot be reasonably contended that the facts as to the cause of the collision are in dispute or that the inferences arising from the facts present room for contrary conclusions by reasonable men as to whose negligence, whether that of the employees of appellant or the driver of the car in which appellee was riding, was responsible for the collision.

Here the appellant's employees were properly on the highway with their road working machinery, where their duties required them to be for repairing the public highway, which the appellant was undertaking to maintain and keep in proper repair. From this it follows that they clearly cannot be held to have been negligent, when in attempting to grade this section of the highway, the equipment with which they were working caught and stalled as they were crossing the highway to grade its other side, back to the beginning point.

Such being the situation presented, we find ourselves unable to concur in the appellee's contention that this road working crew were in any wise negligent, by reason of their allowing the equipment with which they were working the highway to accidentally become stalled, blocking the highway. Further, it follows, in reaching this conclusion, that the appellant was without negligence in thus suffering the highway upon which this work was being done to become momentarily obstructed. Therefore, the negligence of the driver of the car in which appellee was riding, when recklessly driven into collision with this stationary road machinery, must needs have been the sole negligence proximately causing the collision in which appellee sustained his injuries.

The mere fact, it may also be added, that the plaintiff was by the resolution of the General Assembly, mentioned above, authorized to bring suit against the commonwealth, did not operate to foreclose the commonwealth's right to rely on the same defenses or rights, and also be confined by the same limitations, as any other litigant. "The only effect of the resolution

was that the commonwealth waived its immunity as a sovereign power from being sued in its courts for the alleged wrong as a basis for plaintiff's petition." Commonwealth v. Madison, 269 Ky. 571, 108 S. W. (2d) 519, 525; Commonwealth v. Bowman, 267 Ky. 50, 100 S. W. (2d) 801.

We, therefore, for the reasons herein above stated, are of the opinion that the court erred in overruling appellant's motion for a directed verdict, and for such error its judgment must be reversed.